UNITED STATES of America, Appellee,

v.

Charles BABBITT, Defendant, Appellant.

UNITED STATES of America, Appellee,

v.

Ismael SANTIAGO, Defendant, Appellant.

Nos. 82–1011, 82–1028.

United States Court of Appeals, First Circuit.

Argued June 8, 1982.

Decided July 22, 1982.

Ira L. Schreiber, Providence, R. I., with whom William L. Bernstein, Providence, R. I., was on brief, for defendant, appellant, Charles Babbitt.

Edward C. Clifton, Providence, R. I., with whom Stone, Clifton & Clifton, Providence, R. I., was on brief, for defendant, appellant, Ismael Santiago.

James E. O'Neil, Asst. U. S. Atty., Providence, R. I., with whom Lincoln C. Almond, U. S. Atty., Providence, R. I., was on briefs, for appellee.

Before COFFIN, Chief Judge, ROSENN, Senior Circuit Judge,* and BOWNES, Circuit Judge.

COFFIN, Chief Judge.

These two appellants, Babbitt and Santiago, were convicted of possession with intent to distribute, and of distribution of cocaine on March 5, 1981 under count one of the indictment. Appellant Santiago was also convicted under count two of similar offenses occurring on April 2, 1981.

The essential facts are that, after considerable solicitation by an informer at the behest of a Drug Enforcement Agent, Babbitt on March 5, 1981, at his place of business, introduced another DEA agent to Santiago as a likely seller of drugs. Santiago produced a package of cocaine and discussed weight and price with the agent. The sale was consummated for $2300 and the agent, after talking with Babbitt about

---

* Of the Third Circuit, sitting by designation.

his services, agreed to give him $100. On March 10, the three men met once again in Babbitt's office where the agent and Santiago negotiated for, but did not then consummate, another cocaine purchase. At this time the agent paid Babbitt the $100 earlier mentioned. Finally, on April 2, the agent met and negotiated briefly with Santiago at a parking lot near Babbitt's place of business, saw Santiago leave and meet Babbitt's car coming out of an alley, whereupon Babbitt entered Santiago's car for a conversation of a minute or two. Subsequently Santiago drove out of sight, returning soon to the parking lot with one Lopez[1] and a quantity of cocaine. Arrests followed.

Santiago claims two errors: the refusal of the district judge to sever trial of the two counts and a comment by the prosecutor allegedly violating his privilege against self incrimination. Babbitt joins this second claim and adds two other contentions: that the court should have instructed the jury that he was not associated with the events of April 2, and that evidence of his early police record should have been excluded.

### The Motion to Sever

■ Prior to trial Santiago filed a motion under Rule 14 of the Federal Rules of Criminal Procedure, seeking an order that the government elect to proceed under only one count or prosecute them in separate trials. The justification set forth was that there was no connection between counts one and two, other than that Santiago was named in each; that the alleged distributions were made at different times; that there was no allegation of a common scheme; and that the defendant would be prejudiced by the "accumulation of the evidence."

Santiago seems to argue in his brief as if he were making a Rule 8(a) claim of misjoinder of offenses, based on the assumption that the prosecution's justification for charging multiple offenses in an indictment was that the offenses are based on "acts or transactions connected together or constitu-

ting parts of a common scheme or plan". Even if we were to say that Santiago had not waived any objection under Rule 8, *but see United States v. Barbosa*, 666 F.2d 704, 707 (1st Cir., 1981) it is sufficient to point out the additional justification in Rule 8(a) for joinder of offenses, namely that the offenses "are of the same or similar character", as indeed the cocaine transactions of March 5 and April 2 were.

Santiago adds the argument that the counts should not have been tried together because Babbitt's defense, being entrapment ("I did it but I was coerced"), was antagonistic to his ("I deny everything and put the government to its proof"). There are two problems with this argument. In the first place, even if the court had granted the motion to sever and only count one was tried, Santiago would not have solved his problem. He would still have had Babbitt and his entrapment defense to contend with. Secondly, Santiago never made this argument below, either in his Rule 14 motion to sever or at any subsequent time during the trial.

### The Prosecutor's Comment

■ In his closing rebuttal argument the prosecutor, after urging the jury to weigh the evidence free of sympathy or passion said:

"... You make your decision as you know on the facts that are presented before you. While you search out the truth you may wish to ask yourself, '*Who has appeared before me in the form of a witness?*' or 'what argument of counsel has helped me in that search for the truth?'" (emphasis added).

Counsel for appellants immediately requested a bench conference and moved for a mistrial. The court, after vigorously criticizing government counsel, denied the motions, and gave a curative instruction, saying:

"... When you ask yourselves who took the stand as was stated by the prosecutor you just keep in mind the defendant has

---

1. Lopez, named in count two as co-defendant with Santiago, was acquitted by the jury.

a right to remain silent and a defendant has a Constitutional right not to take the stand and you will not even discuss that fact in your jury room—that they have failed to take the stand. That is our system of justice. It's their Constitutional right, their Constitutional right. I cannot stress that to you more forcefully. All right, proceed."

Subsequently, Santiago moved for a new trial based on the prosecutor's comment. The court, in a thoughtful memorandum, considered its obligation under *United States v. Flannery*, 451 F.2d 880 (1st Cir. 1971), and held, first, that the prosecutor's comment did not so clearly point to Santiago's silence at trial as to trigger *Flannery*, and, second, even if it did, the curative instruction sufficed. In *Flannery* we dealt with a case where the prosecutor repeatedly characterized the government's evidence as "uncontradicted", noted that this "clearly call[ed] to the jury's mind" defendant's failure to testify, *id.* at 881–82, and adopted a per se rule of reversal unless the court gave an immediate instruction on a defendant's right and the jury's obligation with an additional statement that the prosecutor was guilty of misconduct.

We note that Babbitt's argument is more attenuated than Santiago's, for Babbitt did testify and his claim of prejudice is that the prosecutor's comment on the failure of two co-defendants to take the stand implied that their testimony would not be supportive. Whether or not Babbitt, having himself testified, is in a position to complain of a comment on the failure of another to testify, we need not address, because we conclude that there was no reversible error for the reasons set forth by the district court.

Of course in retrospect the prosecutor's statement was ill advised, since it obviously created an issue that should not have arisen. But the statement was more ambiguous than those in *Flannery*. It was akin to that in *United States v. Savarese*, 649 F.2d 83 (1st Cir. 1981). When no one other than a defendant is in a position to contradict prosecution testimony, a statement that the testimony is uncontradicted inescapably points to a condition (lack of contradiction) created only by defendant (failure to testify). Here, the prosecutor, in pleading for an objective weighing of evidence, noted three ingredients—the facts that were presented, the witnesses who appeared, and the arguments that were made. We agree with the district court that this reference was likely to suggest to jurors only the necessity of making credibility judgments, not to ask who did *not* appear.

Closing requests that jurors "Recall the witnesses, their testimony and demeanor", are run-of-the-mill. The only distinguishing feature of the argument under attack is the tautological language stressing the fact of appearance "in the form of a witness". (Appearance in any other form would indeed be unusual.) Although this emphasis on the mere fact of appearance gives some support to the argument that jurors were being directed to think of who did not appear, we do not think this sufficiently likely to invoke the *Flannery* requirement of an explicit statement to the jury that the United States attorney was guilty of misconduct. To use the language of other courts, the prosecutor's comments were not such that the jury would "naturally and necessarily" construe them to refer to a defendant's failure to testify. *United States v. Pimental*, 654 F.2d 538, 543 (9th Cir. 1981); *United States v. Jones*, 648 F.2d 215 (5th Cir. 1981).

### Other Issues

■ Appellant Babbitt makes two additional arguments. One is that the court refused to instruct the jury not to consider the testimony regarding Babbitt's meeting with Santiago on April 2, 1981 because he was charged only with the offense on March 5. The testimony, however, came in without objection and revealed that Babbitt left his car, entered Santiago's and talked for a minute or two while Santiago was on his way to obtain cocaine for a waiting customer. Babbitt's requested instruction read, "There is no evidence of any kind which ties in defendant Babbitt to the incident of April 2, 1981, and I instruct that you are not to consider the events of that day . . . , as to Mr. Babbitt . . . ." The first

half of this request was directly contrary to the facts. There was such evidence, although its relevancy to the March 5 transaction would have perhaps been questionable if put into issue. Absent extraordinary circumstances a trial court has no duty to perform major surgery to extract the element of truth from a substantially incorrect request. *E.g., Cherry v. Stedman*, 259 F.2d 774, 777–78 (8th Cir. 1958). *See United States v. Ashland Oil and Transportation Co.*, 504 F.2d 1317 (6th Cir. 1974).

Babbitt's remaining claim is that it was error to admit evidence of two remote arrests, in 1951 (breaking and entering and larceny) and 1964 (receiving stolen goods). The former resulted only in a deferred sentence and the latter in no conviction at all. But this evidence was not admitted under the authority of Fed.R.Evid. 609(b) (relating to evidence of convictions over 10 years old). It was admitted only after Babbitt, on being asked the question, on direct examination, "Do you have a police record, sir?" replied, "No, sir, I don't." Once having testified voluntarily—and untruthfully—on the subject, he could not complain if the actual facts were brought to light. *Cf. Harris v. New York*, 401 U.S. 222, 225, 91 S.Ct. 643, 645, 28 L.Ed.2d 1 (1971).

*The judgments are affirmed.*