**UNITED STATES**

v.

**Major Michael E. RAPPAPORT, 265–74–5326FR, United States Air Force.**

**ACM 24281.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 7 Sept. 1983.

Decided 30 Nov. 1984.

---

Appellate Counsel for the Accused: Colonel Leo L. Sergi and Captain Timothy J. Malloy.

Appellate Counsel for the United States: Colonel Kenneth R. Rengert, Major Brenda J. Hollis and Major Robert E. Ferencik, Jr.

Before HODGSON, FORAY, RAICHLE, CANELLOS, MURDOCK, SNYDER, O'HAIR and CARPARELLI Appellate Military Judges, En Banc.

## DECISION

CANELLOS, Senior Judge:

The accused was convicted, contrary to his pleas, of two specifications of adultery, each specification alleging divers occasions with different women, conduct unbecoming an officer by engaging in sodomy with one of the women, three specifications of wrongful use of marihuana, in violation of Articles 133 and 134, U.C.M.J., 10 U.S.C. §§ 933, 934, and a separate specification of sodomy under Article 125, U.C.M.J., 10 U.S.C. § 925. The approved sentence extends to a dismissal from the service, confinement at hard labor for six months, and forfeiture of $1,500.00 per month for six months.

On appeal, the accused assigns eight errors for our consideration and invites our attention to seven issues raised by the trial defense counsel in his Goode response.[1] In addition, this Court specified the following issue:

DID THE MILITARY JUDGE ERR TO THE SUBSTANTIAL PREJUDICE OF THE ACCUSED WHEN HE ALLOWED DOCTOR B AND MRS. S TO TESTIFY, OVER DEFENSE OBJECTION, AS TO PRIOR ACTS OF UNCHARGED MISCONDUCT BY THE ACCUSED?

We will discuss three of the accused's assignments of error in addition to the specified issue. These are: the military judge erred in not compelling the government to produce a defense requested witness; the military judge erred in admitting an extract from a Department of Justice pamphlet; and, private consensual sodomy between adults of the opposite sex cannot constitutionally be prohibited by Article 125, U.C.M.J.

Before we can discuss any aspect of the case, a review of the salient facts is necessary. The accused was an Air Force psychologist working at MacDill A.F.B. He is married and has three children. Sometime in the middle of 1979, he met Mary Ellen, who was, at the time, an Air Force officer. They began an affair which included acts of sexual intercourse, mutual acts of sodomy, and use of marihuana. The accused claimed the affair ended on Thanksgiving Day of 1980, while Mary Ellen maintained that it ended on December 31, 1980. The date is important because the Charges were received by the officer exercising summary court-martial jurisdiction on 20 December 1982; therefore, any offense which was committed before 20 December 1980 and is subject to a two year statute of limitations (one adultery and one use of marihuana specification) is barred from prosecution. Article 43, U.C.M.J., 10 U.S.C. § 843; M.C.M., 1969 (Rev), para. 68 c.

Independent of the above, Donna, a former patient of the accused, complained that while she was a patient, they engaged in sexual intercourse, sodomy, and use of marihuana. Donna was married at the time to an Air Force officer, and was experiencing marital problems associated with an abusive husband. The accused admitted that Donna was a former patient, but denied that he engaged in any of the wrongful acts as alleged by Donna. He claimed that she suffered from a psychiatric problem, the result of which is she either imagined these occurrences or she lied to get even with him for her husband's administrative separation from the Air Force.[2]

---

1. *United States v. Goode*, 23 U.S.C.M.A. 367, 50 C.M.R. 1 (1975).

2. As a result of reports prepared by the accused regarding Donna's husband's psychiatric prob-

## I

The first issue we will discuss deals with the denial by the military judge of a defense request that he order the appearance of Staff Sergeant Janice Beaver, an active duty non-commissioned officer, as a witness on the merits. Sgt Beaver lived in the same apartment complex as Mary Ellen, and she knew her well from the time she moved into the complex until Mary Ellen moved. At the time of trial, Sgt Beaver was assigned in Germany.

The right of an accused to compel the attendance of witnesses is constitutionally and statutorily protected. Sixth Amendment, United States Constitution; Article 46, U.C.M.J., 10 U.S.C. § 846; *United States v. Iturralde-Aponte*, 1 M.J. 196 (C.M.A.1975). This right is not absolute; it requires a consideration of the materiality and relevancy of the expected testimony. Once materiality has been established, the government must either produce the witness or abate the proceedings. *United States v. Carpenter*, 1 M.J. 384 (C.M.A. 1976). The question of whether to order the production of the witness is within the sound discretion of the military judge. *United States v. Tangpuz*, 5 M.J. 426 (C.M.A.1978).

The defense made an offer of proof at trial that Sgt Beaver could provide evidence that the accused and Mary Ellen terminated their relationship in November 1980, and that therefore the statute of limitations would act as a bar to trial on the marihuana and adultery charges which involved Mary Ellen. We have reviewed the affidavit executed by Sgt Beaver and, in pertinent part, it provides:

> I remember that she (Mary Ellen) told me of putting all the things he (the accused) had given her in a box and taking it to his office to give them all back to him. The manner in which she related this seemed to indicate this was the point at which the relationship was terminated. I am reasonably sure this was in the October or November time frame.

lems, the husband was administratively separat-

We find that the statement of Sgt Beaver is vague and uncertain and is not material and relevant to the issue of when the last act of sexual intercourse occurred between the accused and Mary Ellen and when they last used marihuana together. Mil.R.Evid. 401. Therefore, we find, on the facts, that the military judge did not abuse his discretion by denying the defense request for the production of Sgt Beaver.

## II

We next discuss whether the military judge erred in admitting an extract from the Department of Justice pamphlet "Drug Abuse." We find that, although portions of the extract were relevant, most of it was irrelevant, and therefore should not have been admitted on the merits without deletion of the irrelevant matters. On the facts of this case, however, such error was harmless. We have previously expressed our disapproval of the admission, on the merits, of the same irrelevant information. *United States v. Harris*, 18 M.J. 809 (A.F.C.M.R.1984). We reiterate such disapproval herein.

## III

The accused asserts that sodomy, under the circumstances of this case, charged as a violation of Article 125, U.C.M.J., is not an offense, because it violates the accused's rights of privacy. This Charge involves the sodomitical relationship with Mary Ellen. The government concedes that the acts occurred off base and that the relationship was private, consensual, and had no connection with the accused's duties. The government further concedes that these factors were why they chose to charge the violation with Mary Ellen under Article 125, U.C.M.J., whereas they charged very similar violations with Donna under Article 133, U.C.M.J.

We need not reach the constitutional issue presented because we find, on the facts, that the offense was not service-connected and the court-martial therefore

ed from the Air Force.

lacked jurisdiction to try it. *O'Callahan v. Parker*, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969). In reaching this decision, we have considered the twelve factors enumerated by the Supreme Court in *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971), and we find: the accused was properly absent from the base; the offense was committed off base; the place was not under military control; the place was not overseas; it was in peacetime; there was no connection between the crime and the accused's duties; the victim was not performing military duties at the time; civilian courts were available to try the case; there was no flouting of military authority; there was no threat to the military facility; there was no violation of military property, and the offense is one that is triable in civilian courts.

## IV

We finally turn our attention to the specified issue. The accused testified in the defense's case-in-chief. He admitted that he had an affair with Mary Ellen; that this included sexual intercourse, sodomy, and use of marihuana on one occasion. He totally denied any such activity with Donna. On cross-examination, he denied that he had ever smoked marihuana with his supervisor, Dr. B. In rebuttal, the prosecution called Dr. B, who was permitted to testify, over defense objection, that he and the accused used marihuana together on a number of occasions.

■ The accused argues that he was improperly cross-examined because his direct testimony was that he only smoked

marihuana once *with Mary Ellen*, not that he only used marihuana once. We note that he also testified on direct examination that he had been administered a number of urinalysis tests for drugs during his Air Force career, and that the results always had been negative. We find that the accused opened the door sufficiently so as to allow cross-examination on his use of marihuana with Dr. B. The clear implication of his direct testimony was that he did not use drugs except for the one occasion he admitted to. We do find, however, that the military judge did err when he permitted the prosecution to call Dr. B and to elicit from him extrinsic evidence of the accused's drug usage, after the accused had denied such violations. Mil.R.Evid. 608(b).[3] *See also* Mil.R.Evid. 405(a) and (b).

## V

■ The prosecution also called Mrs. S in rebuttal. She was allowed to testify, over defense objection, that during 1978 she was a patient of the accused; that on three or four occasions she had sexual relations with him; that during these episodes they smoked marihuana, which the accused referred to as "sensimilla" and, the accused broached the subject of participating in a *menage-a-trois*. Mrs. S's testimony paralled the allegations made by Donna, notably the references to sensimilla and *menage-a-trois*. The military judge admitted the testimony, finding that it established a common plan, design and *modus operandi*, and was therefore admissible under Mil.R.Evid. 404(b).[4] In this, we find that the military judge erred.

---

**3.** *Rule 608. Evidence of Character, Conduct, and Bias of Witness*

(b) *Specific instances of conduct.* Specific instances of conduct of a witness, for the purpose of attacking or supporting the credibility of the witness, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the military judge, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning character of the witness for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another wit-

ness as to which character the witness being cross-examined has testified....

**4.** *Rule 404. Character Evidence Not Admissible to Prove Conduct; Exceptions; Other Crimes.*

(b) *Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

*Modus operandi* is a factor in determining the identity of a perpetrator. *United States v. Woods*, 613 F.2d 629 (6th Cir.), *cert. denied*, 446 U.S. 920, 100 S.Ct. 1856, 64 L.Ed.2d 275 (1980). To be admissible to show *modus operandi*, the uncharged acts must be so unusual and distinctive so as to be like a signature. *United States v. Benedetto*, 571 F.2d 1246 (2nd Cir.1978). Identity was not an issue in this case, and even if it were, the acts related by Mrs. S did not meet the stringent test for admissibility as evidence of *modus operandi*.

To be admissible to show a common scheme or plan, the other offenses must be more than similar; they must be almost identical, with a concurrence of common features and so interconnected as to naturally suggest that all of the acts were the result of the same plan or design. *United States v. Dothard*, 666 F.2d 498 (11th Cir.1982); *United States v. Danzey*, 594 F.2d 905 (2nd Cir.), *cert. denied*, 441 U.S. 951, 99 S.Ct. 2179, 60 L.Ed.2d 1056 (1979).

Within the above framework, we fail to see how the testimony of Mrs. S would qualify under Mil.R.Evid. 404(b) as evidence of a common plan or scheme. The mere incantation of those words will not cause evidence to be admissible under the Rule. *United States v. Watkins*, 17 M.J. 783 (A.F.C.M.R.1983). We find that the evidence reveals nothing more than a collection of disparate acts of the appellant having illicit sex and drug abuse in common. *United States v. Brannan*, 18 M.J. 181 (C.M.A.1984); *United States v. Watkins, supra.* Such behavior is not so unique as to specifically identify the accused; it clearly does not establish a plan or design. Any other use of such evidence would be inconsistent with the Rules barring character evidence. Mil.R.Evid. 404(b).

## VI

Having determined that the evidence adduced from both Dr. B and Mrs. S was improperly admitted at trial, we must decide whether such error acted to the legal prejudice of the accused. Ultimately, the issue in this case revolved around the relative credibility of the accused and the two complainants. In so far as Donna is concerned: she testified that certain events occurred; her credibility was attacked by reference to her psychiatric problems; the accused denied any involvement with her; and, there was no independent corroboration of her account of the events. Mary Ellen testified as to certain events; the accused agreed in part but disagreed as to some; and, there was no corroboration as to the disputed events.

Here, the erroneously admitted evidence was used in an impermissible manner to impeach the accused in a case where credibility was the main issue in all of the specifications. On these facts, we cannot state that the cumulative effect of these errors did not influence the trier of fact, or that it had only a slight effect on the decision. Legal prejudice is therefore apparent. *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1945); *United States v. Barnes*, 8 M.J. 115 (C.M.A.1979); *United States v. Mendoza*, 18 M.J. 576 (A.F.C.M.R.1984).

## VII

Accordingly, the findings of guilty and the sentence are set aside. Charge III and its specification which alleges sodomy under Article 125, U.C.M.J., is jurisdictionally defective and is dismissed. A rehearing may be ordered on the remaining charges and specifications.

FORAY, Senior Judge, and MURDOCK, O'HAIR and CARPARELLI, Judges, concur.

RAICHLE, Senior Judge, absent.

SNYDER, Judge, with whom HODGSON, Chief Judge, joins (concurring in part and dissenting):

I concur with Parts I through III of the majority opinion. However, for the reasons set forth *infra*, I disassociate myself

from Parts IV through VI, and respectfully dissent.

## I

The majority holds that the military judge "erred" by allowing the prosecution to call Dr. B and elicit extrinsic evidence of prior usage of marijuana. But did the military judge abuse his *broad* discretion? I think not. In reviewing issues arising under Mil.R.Evid. 608(b), the test is not whether we would have reached the same result as the trial judge. The proper test is whether the trial judge abused his discretion, and that discretion is very broad. *United States v. Pierce*, 14 M.J. 738 (A.F.C.M.R.1982); *United States v. Corbin*, 734 F.2d 643, 675 (11th Cir.1984); *United States v. Halbert*, 712 F.2d 388 (9th Cir. 1983), *cert. denied*, — U.S. —, 104 S.Ct. 997, 79 L.Ed.2d 230 (1984). Indeed, it has been held that in order for a trial judge to abuse his discretion while applying Rules 404 and 608, he must act arbitrarily and irrationally. *United States v. Smith*, 727 F.2d 214 (2d Cir.1984).[1]

When that test is applied to the instant case, I find it extremely difficult to conclude that the trial judge abused his broad discretion. The majority agrees that the area in question was appropriately inquired into on cross-examination. Thus, it would appear to me that it was for the trial judge to determine whether the rebuttal evidence was relevant solely on a collateral issue or otherwise. Since he made that decision in accord with the state of the evidence at that point in the trial, I believe that his decision was neither arbitrary nor an abuse of discretion. *United States v. Corbin* and *United States v. Halbert*, both *supra; accord United States v. Ray*, 731 F.2d 1361 (9th Cir.1984).

Second, in any event, I do not believe the trial judge erred in allowing Dr. B's testimony. All one need do is look to the purpose of Rule 608(b) as well as its wording. The purpose of Rule 608(b) is to prevent *collateral* matters from assuming a prominence at trial out of proportion to their significance. Accordingly, the rule is meant to prevent minitrials on extrinsic evidence which relates wholly to collateral issues which may confuse the factfinders. *Carter v. Hewitt*, 617 F.2d 961, 970–971 (3d Cir.1980). The collateral matter which the rule is aimed directly at precluding is evidence offered *solely* to impeach a witness' credibility, *i.e.*, to show the witness has a propensity to lie. *United States v. Bosley*, 615 F.2d 1274 (9th Cir.1980); *see United States v. Russell*, 717 F.2d 518 (11th Cir. 1983). However, where the evidence is proferred to contradict a witness' testimony on a material issue, it is admissible notwithstanding Rule 608(b). *Carson v. Polley*, 689 F.2d 562 (5th Cir.1982).

In *United States v. Opager*, 589 F.2d 799, 803 (5th Cir.1979), the United States Court of Appeals for the Fifth Circuit aptly discussed the issue as follows:[2]

> Similarly, we believe that Rule 608(b) should not stand as a bar to the admission of evidence introduced to contradict, and which the jury might find disproves, a witness's testimony as to a material issue of the case.
>
> \* \* \* \* \* \*
>
> To exclude under Rule 608(b) ... otherwise relevant evidence, as the government would have us do today, would completely divorce legal proceedings from the truth seeking process.

The Ninth Circuit expressed the same philosophy in *United States v. Batts*, 558 F.2d

---

1. We have stated in earlier decisions that Mil.R. Evid. 608 and 404 are taken verbatim from the Federal Rules of Evidence. *United States v. Woodyard*, 16 M.J. 715 (A.F.C.M.R.), *pet. denied*, 17 M.J. 204 (1983). Thus, I shall use Federal as well as military precedent.

2. To show predisposition, the prosecution elicited testimony from the informant that while he and the defendant were working together in a beauty salon, the informant observed the defendant use and distribute cocaine. The defense sought to introduce business records from the salon which would have suggested that the informant never worked there, but the trial judge sustained the prosecution's objection under Rule 608(b). The Court of Appeals held the ruling to be reversible error.

513, 517–518 (9th Cir.1977), *cert. denied,* 439 U.S. 859, 99 S.Ct. 178, 58 L.Ed.2d 168 (1978):

> We believe that the ultimate purpose of the rules of evidence should not be lost by a rigid, blind application of a single rule of evidence. Individual rules of evidence, in this instance Rule 608(b), should not be read in isolation, when to do so destroys the purpose of ascertaining the truth. This is especially so when a witness directly contradicts the relevant evidence which Rule 608(b) seeks to exclude.

\*    \*    \*    \*    \*    \*

The admittance of rebuttal evidence is subject to the sound discretion of the trial court. [citations omitted] Great deference must be accorded to this discretion and the judgment of the trial court. He was present and able to observe appellant's manner and demeanor on the stand. Our review of the "cold record" discloses to us that the general tenor of appellant's direct testimony was a portrayal of one completely naive about drugs. The trial judge was in the best position to evaluate the effect this mispainted picture had on the jury. By admitting the rebuttal evidence, the trial court merely completed the picture as to appellant's true involvement and knowledge in the drug world and thereby corrected a distorted view of appellant's testimony.

Simply stated, when the evidence is offered to contradict the witness on a material issue, it is no longer collateral. *United States v. DiMatteo,* 716 F.2d 1361 (11th Cir.1983); *cf. United States v. Russell, supra* (proferred testimony excluded as collateral because it related to alleged purpose of meeting between defendant and informant, rather than to the incriminating statements made at the meeting). Such evidence is material even if it flows from cross-examination, so long as the cross-examination relates directly to direct examination as opposed to cross-examination on collateral matters of credibility. *See Unit-ed States v. Pantone,* 609 F.2d 675 (3d Cir.1979).

In the instant case, the majority concludes that the clear tenor of the accused's direct testimony was that except for one brief experiment, he was not a user of marijuana. This portion of the accused's testimony concerned a core issue of the case—whether he used marijuana as charged. Thus, contradicting him on the matter was not merely raising a collateral issue, and, therefore, Rule 608(b) was not an impenetrable barrier. *United States v. Opager* and *United States v. Batts,* both *supra; see generally, United States v. Billups,* 692 F.2d 320 (4th Cir.1982), *cert. denied,* —— U.S. ——, 104 S.Ct. 84, 78 L.Ed.2d 93 (1983); *United States v. Babbitt,* 683 F.2d 21 (1st Cir.1982). Since the evidence was not collateral, it was clearly admissible under Rule 404(b) as rebuttal to the accused's near general denial of having used marijuana. *United States v. Martazavi,* 702 F.2d 526 (5th Cir.1983).

Therefore, I conclude that Dr. B's testimony was hardly collateral. Consequently, I believe the trial judge was well within his discretion in allowing the testimony.

## II

I now turn to the testimony of Mrs. S, which was also admitted as rebuttal evidence. Initially, I repeat the question raised in Part I: Did the military judge abuse his discretion?

The majority concludes that Mrs. S' testimony is barred as inadmissible character evidence and cites Rule 404(b). It is not Rule 404(b) which excludes character evidence but Rule 404(a). Rules 404(a) and (b) are two separate and distinct rules of evidence. When evidence of other crimes, wrongs, or acts, is relevant on an issue *other* than character, the evidence is admissible under Rule 404(b) notwithstanding Rule 404(a). It is the military judge who determines whether the evidence is relevant on an issue other than character. Once the military judge so determines, he then strikes the balance required by Rule 403. The military judge's ruling is reversi-

ble only for a clear abuse of his very broad discretion. *United States v. Woodyard,* 16 M.J. 715 (A.F.C.M.R.), *pet. denied,* 17 M.J. 204 (1983); *United States v. Williams,* 17 M.J. 548 (A.C.M.R.1983), *pet. denied,* 18 M.J. 432 (1984); *United States v. King,* 16 M.J. 990, 995 (A.C.M.R.1983).[3]

In addition to believing that the military judge did not abuse his discretion, I agree with his ruling that Mrs. S' testimony tended to establish a common plan, design, and *modus operandi.* Initially, I disagree with the majority's narrow application of the term "identity." A not guilty plea places all matters in issue, including identity. *United States v. Woodyard, supra.* Thus, evidence which tends to prove that the accused did, in fact, commit the charged offense also establishes his identity as the perpetrator. Second, I believe the majority misapplies Rule 404(b) as it relates to evidence of other crimes, etc., which is relevant on the issues of *modus operandi,* common plan, etc.

The majority is correct in stating that *modus operandi* evidence must suggest a signature, and by stating that common plan, etc., evidence must naturally suggest that all acts are of the same plan. The majority opinion, however, seems to suggest that the common scheme, etc., must be highly unique or extremely creative in and of itself. If so, such is not the case. The test is whether *the accused has used a certain artifice or method* in a unique or identifiable way, regardless of how common the artifice or method may be. *See generally, United States v. Pisari,* 636 F.2d 855, 866–867 (1st Cir.1981).

Applying *United States v. Brannan,* 18 M.J. 181, 184 (C.M.A.1984), the majority states as follows: "We find that the evidence reveals nothing more than a collection of disparate acts of the appellant having illicit sex and drug abuse in common." I submit that the majority has applied only one facet of *Brannan,* and that the evidence in the instant case more than quali-

fied under Rule 404(b). The language which the majority lifts, in part, from *Brannan* was referring solely to evidence that Brannan was seen with marijuana. However, on the issue of whether other evidence was relevant on *modus operandi,* the Court said as follows:

> Arthur and Yates did [offer testimony relevant on *modus operandi*] but some question exists in our mind whether this method of distribution of marihuana is so unusual and distinctive that it is like a signature. [citations omitted] We conclude, at the most, that Arthur's testimony and a portion of Yates' testimony *met the requirement of Mil.R.Evid. 404(b) for this evidentiary purpose.* (Emphasis added)

*United States v. Brannan, supra* at 184. The method at issue was the accused's use of a brown paper sack containing plastic baggies of marijuana, and his distributing them out of the sack from a motor vehicle. The use of a paper sack as a marijuana container is hardly a uniquely creative method, but it still qualified—albeit barely. The evidence in the instant case is even stronger.

Mrs. S testified that while seeking professional treatment from the accused in his official capacity, she and the accused engaged in illicit sexual relations. She related that when they had sex, the accused provided marijuana of the sensimilla type and that on occasion he broached the subject of a *menage-a-trois.* This was the same "technique" testified to by Donna. Although the accused is not the only psychologist to prey upon his female patients, and he is certainly not the only lover with a penchant for *menage-a-trois,* or to use marijuana as part of his lovemaking script, the evidence does show that *to be his technique or signature.* Under these circumstances, Mrs. S' testimony clearly qualified under Rule 404(b). *United States v. King,*

---

**3.** The majority opinion apparently implies *sub silentio* that the trial judge *has no discretion whatsoever* in applying Mil.R.Evid. 404(b) and 608(b). If so, I submit that such a position is entirely contrary to applicable precedents.

*supra*[4]; *see United States v. Brannan, supra.*

Just as a mere incantation of *modus operandi*, etc., will not establish admissibility, neither will the mere incantation that "it is only to show that the accused is a bad person" dispel admissibility. At any rate, considering the posture of the evidence and the trial judge's having seen and heard the witnesses, I fail to see an abuse of discretion in allowing the testimony.

### III

Even if the military judge committed error, I fail to discern the prejudice. The accused testified in surrebuttal and steadfastly denied Dr. B's and Mrs. S' allegations. He also related less than favorable matters concerning Dr. B's and Mrs. S' character. In all probability, the factfinders based their verdict on his demeanor as much as the prosecution's evidence. Additionally, the military judge provided proper instruction on the limited purposes for which the evidence was admitted.

I would affirm the ruling of the military judge, the findings of guilty, and the sentence.

4. The evidence of other crimes, etc., at issue here was the testimony of two witnesses that they met the accused psychologist while on duty as medics. On separate occasions some six months apart, each went to the accused's quarters for counselling. The accused offered each a massage and had sexual intercourse with each one. The Court held the evidence to be relevant in showing a familiar pattern where the accused would prey on and sexually exploit young women using his profession, his rank, and sometimes his military quarters to accomplish that end.