**UNITED STATES**

v.

**Technical Sergeant Ralph A. HOLT, FR 407–68–4864, United States Air Force.**

**ACM 24974.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 6 April 1985.

Decided 21 Feb. 1986.

Appellate Counsel for the Accused: Colonel Leo L. Sergi and Lieutenant Colonel Patrick C. Sweeney.

Counsel for the United States: Colonel Kenneth R. Rengert, Captain Joseph S. Kistler and Captain Teresa J. Stremel, USAFR.

Before HODGSON, FORAY and MICHALSKI, Appellate Military Judges.

1. The appellant was acquitted of rape, sodomy

## DECISION

HODGSON, Chief Judge:

Mil.R.Evid. 404(b) states:

*Rule 404. Character Evidence Not Admissible to Prove Conduct; Exceptions; Other Crimes*

\* \* \* \* \* \*

(b) *Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The application of this provision is the basis of the appellant's appeal. In concluding the trial judge did not err in admitting evidence of uncharged misconduct on the theory that the testimony established a common plan, scheme, or *modus operandi,* we think it helpful to briefly relate the factual setting in which the challenged evidence was offered.

From all accounts in this vigorously contested trial, the appellant possessed an over-active libido which resulted in his conviction [1] of three allegations of extortion to obtain sexual favors and personal services; i.e., housekeeping and cooking chores, and to prevent the reporting of his prior sexual misconduct with the victims. His methodology in courting the women involved was direct and apparently effective. He would approach his quarry and ask them to go out with him; repeated rebuffs were ignored. Eventually, his persistence would be rewarded, and they would agree to a date. Ultimately, they would end up at his apartment where he would have sexual relations with them. At some time during their association, he would take nude and semi-nude photographs of them. Later, when the women indicated a wish to terminate the relationship he would threaten to either publicly display the photographs or send them to their husbands. In each case,

and sexually harassing a subordinate.

the women agreed to the appellant's demands.

Over defense objection, the prosecution presented three witnesses whose experiences with the appellant mirrored closely his actions with the victims of the charged offenses. One witness testified that after she became intimate with the appellant he took nude photographs of her, and when she indicated she did not wish to see him anymore, he threatened to "make xerox copies" of the nude photographs and pass them out to the employees she worked with if she did not have sexual relations with him. She agreed to have sexual relations with him and he gave her the photographs. A second witness testified that after accepting a "double date" with the appellant, the other couple never appeared. Instead, the two of them went to his apartment where, while in the bedroom, they watched slides of women in various stages of undressing. When the appellant attempted to photograph her, she put a pillow in front of her face. When he tried to kiss her, she insisted he take her home, which he did. Unbeknown to her, the appellant took a picture of her at a swimming pool in a white bikini which he showed to friends on base. When she asked for it back, he said, "It will cost you." The third witness related that after she declined a date with the appellant, he came to her apartment and asked her "to go downtown with him." She agreed and they stopped by his apartment so he could change clothes. Once there they ended up in the bedroom where he showed slides of nude and semi-nude women. At this point the appellant attempted to undress her with some measure of success. During this process she hit him in the mouth, and told him she had "VD." Apparently, this cooled his ardor somewhat for he waivered and said, "No, maybe I don't want to do this." Later, she ran from the apartment naked from the waist down, and got a ride to the base from a passing woman motorist.

The prosecution also established that the appellant admitted to a co-worker that while "he did not drink, smoke or do dope, he liked sex." He indicated he would meet young women on base, and under the pretext of taking them to a movie, dinner, etc., he would stop by his apartment. While there his rank was enough to intimidate most of them into having sexual relations.

For his part, the appellant admitted having sexual relations with the women named in the three specifications, but denied he threatened to publish nude photographs of them if they did not do his bidding. He also offered extensive testimony as to his good duty performance and reputation for truthfulness.

Mil.R.Evid 404(b) has been heavily litigated in military courts. *United States v. Watkins*, 21 M.J. 224 (C.M.A.1986); *United States v. Brannan*, 18 M.J. 181 (C.M.A. 1984); *United States v. Rappaport*, 19 M.J. 708 (A.F.C.M.R.1984), *pet. granted*, 19 M.J. 259 (C.M.A.1984); *United States v. Logan*, 18 M.J. 606 (A.F.C.M.R.1984), *pet. denied*, 19 M.J. 103 (C.M.A.1984). This is not surprising for whenever the prosecution attempts to offer other acts of the accused as part of its substantive proof there is a danger of unfair prejudice. Of course, other acts of misconduct are admissible if they meet the test of Rule 404(b). Further, we have held several times that it is not enough for the prosecution to just aver that the evidence is being offered to show a plan or scheme. *United States v. Rappaport, supra; United States v. Logan, supra*. The government must *establish* how the other acts exhibit this common plan or scheme. Indeed, in *Rappaport* we held that the acts attributed to the accused failed to meet this test and were, therefore, inadmissible.

■ The key to admissibility of such acts is whether they are sufficiently distinctive to be viewed as "fingerprints" or the "signature" of the person charged. The more unique and unusual the common characteristics are of the similar acts involved, the more probative the prior acts become. *United States v. Benedetto*, 571 F.2d 1246 (2d Cir.1978). The acts do not have to be identical. If the characteristics relied upon are sufficiently idiosyncratic to form a fair

inference of a pattern, that is enough. *United States v. Slicker,* 751 F.2d 477 (2d Cir.1984).

The question before us is this: Did the prosecution establish that the appellant had a common plan or scheme involving a series of crimes so related to each other that proof of one or more tends to prove the offenses charged and to connect the appellant with their commission? We conclude they did. The appellant's method of operation can be bluntly stated as the seduction of sexual partners through extortion. The only distinguishing feature in the situations just discussed is the name of the victim. The other circumstances are virtually the same. In a similar case the Missouri Court of Appeals held that in a prosecution for deviate sexual assault on a female inmate of a juvenile detention center by the house parent, testimony of three former inmates, other than the victim, was admissible because the defendant's approach to each victim was so distinctive as to be like a signature. *States v. Koster,* 684 S.W.2d 488 (Mo.App.1984). Likewise, where a father has sexually assaulted a daughter, the experiences of the other daughter that "paralleled" that of her sister is admissible to show a common plan or scheme. *State v. Keithley,* 218 Neb. 707, 358 N.W.2d 761 (1984); *State v. McCellan,* 323 S.E.2d 772, 774 (S.C.1984). A common design may be established through evidence of an accused's sexual misconduct with one other than the complainant. *People v. Middleton,* 38 Ill.App.3d 984, 350 N.E.2d 223 (1976); *see also State v. Norris,* 689 P.2d 243 (Mont.1983).

It should be remembered, however, that Mil.R.Evid. 404(b) does not exist in a vacuum, but must be considered in relationship with Mil.R.Evid. 403. This allows evidence to be excluded if its probative value is substantially outweighed by the danger of unfair prejudice to the accused. *United States v. Borland,* 12 M.J. 855 (A.F.C.M.R. 1981). While we are confident the military judge in this trial judicially performed this test, we strongly suggest the better practice is for trial judges to enter special findings explaining how this sensitive balancing required by Rule 403 was accomplished. *See United States v. Dodson,* 21 M.J. 237 (C.M.A.1986). For the reasons stated, we hold the trial judge did not err in admitting the challenged evidence under a proper limiting instruction. *United States v. Watkins, supra; United United States v. Brannan, supra.* The findings of guilty and the sentence are

AFFIRMED.

FORAY, Senior Judge, and MICHALSKI, Judge, concur.