**UNITED STATES, Appellant**

v.

**Colonel Mildred L. RAICHLE, Military Judge, Appellee,**

**Captain Ronald Body, Real Party in Interest.**

**COMR Dkt. No. 89A–02.**

U.S. Air Force Court of Military Review.

5 June 1989.

Colonel Joe R. Lamport; Lieutenant Colonel Robert E. Giovagnoni and Captain Joseph V. Treanor, III for the Appellant.

Peter Cushing, Orlando, Fla., for the Appellee.

Before LEWIS, BLOMMERS and KASTL, Appellate Military Judges.

## DECISION

LEWIS, Senior Judge:

Captain Body was charged under Articles 128 and 134, UCMJ, 10 U.S.C. §§ 928, 934, with eight specifications alleging acts of indecent assault and various indecent acts involving child sexual abuse and perversion. These charges and specifications did not reach trial on their merits. The military judge dismissed the charges and specifications based on a finding that the accused had been denied a speedy trial. R.C.M. 707(e). The Government has appealed that ruling. Article 62, UCMJ, 10 U.S.C. § 862. We find that the military judge's ruling was correct in light of prevailing case law.

The general rule is that, absent excludable delay, an accused must be brought to trial within 120 days after notice to the accused of preferral of charges. R.C.M. 707(a)(1). Charges were preferred against Captain Body on 27 June 1988. The initial Article 39(a), UCMJ, session commenced on 13 March 1989, 259 days later. This session was devoted to pretrial motions and, thus, interrupted the running of the speedy trial clock. *See* R.C.M. 707(c)(1)(C). The military judge concluded that 27 days of the 259 day period should be allocated to the defense. An additional 14 days were determined to be excludable owing to "unusual operational requirements and military exigencies." R.C.M. 707(c)(9). The resulting deduction of 41 days leaves a net period of 218 days between preferral and the initial Article 39(a) proceeding, still well in excess of the 120 day standard.

The military judge concluded that the critical period at issue encompassed 140 days from 31 August 1988 until 18 January

1989. She allocated this entire period, sufficient by itself to exceed the allowable speedy trial standard, to the Government. To understand the significance of this period we must examine certain key events that occurred just prior to commencement of the period.

The Article 32, UCMJ, pretrial investigation commenced on 16 August 1988 in Orlando, Florida, following a defense request that it be delayed from its originally scheduled date in July 1988. Although Captain Body was assigned to Goodfellow Air Force Base, Texas, the majority of the witnesses were located in and around Orlando, the situs of the alleged offenses. Five days prior to the commencement of the investigation, Captain Body's civilian defense counsel corresponded with the investigating officer and requested that certain witnesses be produced to testify at the pretrial hearing. Six of these witnesses subsequently declined to appear unless under subpoena. The witnesses, who were all civilians, were the two alleged victims, the victims' mother (Captain Body's former spouse), an examining physician, a child psychologist and a child abuse counsellor employed by a state agency. The three latter witnesses had had significant professional contacts with one or both of the alleged victims. Being civilians, the witnesses were not subject to compulsory process. R.C.M. 405(g)(2)(B), Discussion. The investigating officer determined that the six witnesses were "not available." R.C.M. 405(g)(2)(B).

The remaining chronology is based primarily on that provided in the Government's brief in support of the appeal. It has been supplemented by undisputed evidence, except where specifically indicated, from the record.

16 August 1988—The civilian defense counsel requested that depositions be taken of the unavailable witnesses. The investigating officer indicated that he would not close the investigation until he had responses back from the convening authority on the requests for depositions and that he would notify the defense counsel and set a date by which counsel could submit any matters which he wanted considered.

18 August 1988—The defense counsel reiterated in writing his position that the Article 32 investigation was incomplete because of the failure of key witnesses to attend the proceedings. He stated, "I would request first that the proceedings be abated until such time as the witnesses attend and further that their depositions be ordered pursuant to Art. 49." At the conclusion of the letter, he stated further, "Accordingly, it is my request that you recommend to the SPCM convening authority that the proceedings be abated until the defendant is afforded the pretrial rights contemplated by the Code."

31 August 1988—The investigating officer submitted his report to the special court-martial convening authority. Three significant matters noted in the report were: (1) That the defense had been "given until 29 Aug 88 to submit matters;"[1] (2) that the defense request for abatement until depositions were secured had been conveyed to the convening authority's staff judge advocate who had instructed the investigating officer "to complete the investigation with the witnesses available...." and, (3) that the investigating officer recommended that three of the eight specifications be dismissed because of a lack of evidence to support them.

6 September 1988—The special court-martial convening authority forwarded the charges to the general court-martial convening authority and stated his concurrence with the investigating officer's recommendation that five out of the eight specifications be referred to trial. On the same date the special court-martial convening authority's staff judge advocate corresponded with the civilian defense counsel and advised that if he wished to persist in his request for depo-

---

1. The military judge declined to find a defense delay, saying, "At no time was there a formal request for delay from the defense or any offi-

cial action on such request." *See* R.C.M. 707(c)(3).

sitions he should submit a request in accordance with R.C.M. 702(c)(2), a provision requiring the requestor to identify each person to be deposed and to provide a statement of the matters upon which each person was to be examined.

13 September 1988—The civilian defense counsel reiterated his request to the staff judge advocate in writing. He stated, in part, "I would suggest to you that referral of these charges would be highly inappropriate until such time as depositions of the key witnesses are taken as is set forth in my separate letter to you dated September 13, 1988." By separate correspondence the defense counsel recited those matters about which he desired to examine each of the requested witnesses.

7 October 1988—The staff judge advocate spoke telephonically with the civilian defense counsel and stated that the general court-martial convening authority had approved the depositions. The exact substance of the conversation relative to scheduling the depositions was disputed at trial. However, the dates of 20 October, 28 October and 2 November 1988 were agreed to for scheduling the depositions.

11 October 1988—The staff judge advocate telephonically advised the defense counsel that one of the witnesses, the child psychologist, would be outside the country until 9 November 1988. The further exact substance of this conversation was disputed at trial.

24 October 1988—The special court-martial convening authority approved a delay in the taking of the depositions until 18 November 1988, based on his understanding of the 11 October 1988 conversation between his staff judge advocate and the defense counsel. The record does not demonstrate that this action was communicated to Captain Body's counsel.[2]

18 November 1988—Depositions of the victims' mother and two other requested witnesses were taken. For reasons not clear from the record, the two alleged victims were not deposed. The child psychologist became ill and could not be deposed.

25 November 1988—The defense counsel was queried and persisted in his request that the child psychologist be deposed.

5 December 1988—The child psychologist's deposition was taken.

12 December 1988 to 13 January 1989—The final deposition was being transcribed by a private court reporter. The deposition officer contacted the reporter at least seven times to check on the status of the transcript.

18 January 1989—The deposition officer received the transcript, thus terminating the 140 day period in primary dispute.

13 February 1989—The general court-martial convening authority, having considered the Article 32 investigation and matters developed by the depositions, referred the charges and all eight specifications to trial.

The military judge, in allocating the full period from 31 August 1988 until 18 January 1989 to the Government noted that the recent opinion in *United States v. Cook*, 27 M.J. 212 (C.M.A.1988), was "compelling." While *Cook* may be distinguished on its facts in certain particulars, the military judge's reliance on its underlying theme was well placed. In *Cook*, the defense counsel requested that the Government produce its witnesses rather than relying upon written statements at the Article 32 investigation. This request was denied by the investigating officer. The staff judge advocate to the general court-martial convening authority returned the case for further investigation so that the Government might "perfect" its case. *Id.* at 214. The defense counsel renewed her request for production of witnesses, although she later acknowledged in testimony that she real-

---

**2.** The military judge declined to allocate any of the deposition scheduling delays to the defense. She stated, "The record contains no specific or express request for delay by the defense after 16 August 88. Any delays that the government thought were being requested were implied or inferred." The military judge did not address the specific issue of whether a period of delay might have been authorized in accordance with R.C.M. 707(c)(5)(A).

ized her request would necessarily occasion some delay. The Government's witnesses were produced, and a civilian witness, Cook's former wife, was deposed in conjunction with the second Article 32 hearing. The Court held that the defense request that witnesses be produced did not constitute acquiescence in a reasonable period of delay within the meaning of R.C.M. 707(c)(3). The Court rejected an "informal, after-the-fact allocation to the defense of a 'reasonable' period of delay," in this circumstance, while noting that such a process would not meet the speedy trial demands of R.C.M. 707. *Id.* at 215.

In the appeal at hand, the civilian defense counsel was demanding, much in the same manner as was counsel in *Cook*, that Government witnesses be produced. This was his prerogative. As this Court has recognized, one of the dual functions of an Article 32 investigation is to serve as a discovery proceeding for the accused and, thus, to protect him from baseless charges. *United States v. Miro*, 22 M.J. 509, 511 (A.F.C.M.R.1986), *citing United States v. Samuels*, 10 U.S.C.M.A. 206, 27 C.M.R. 280 (1959). The civilian defense counsel, in requesting depositions, was merely suggesting an alternative to live testimony which is specifically provided for in the Manual. R.C.M. 405(g)(4)(A)(iv).

■ While the trial counsel argued on the motion that the depositions were not perceived by the convening authority nor his representatives as an integral part of an extended Article 32 proceeding, this is not a material consideration. There is little question that the general court-martial convening authority considered the information developed through depositions in referring all charges and specifications to trial, despite earlier recommendations that three specifications be dismissed. The depositions obviously served to "perfect" the Government's case to the convening authority's satisfaction in the same manner as did the second Article 32 proceeding directed in *Cook*. The military judge applied the holding in *Cook* correctly. There are distinctions between the two situations, but no basic differences in principle.

However, one principal factual distinction in this case merits discussion. Concern and confusion apparently arose in the minds of the Government representatives in this case owing to the defense counsel's demand to "abate" (or terminate and nullify) the Article 32 proceeding "until" the Government witnesses were produced. This was clearly a contradiction in terms. The military judge's interpretation of the defense demand was "that the Article 32 proceeding was inadequate and should be ended unless the government would depose certain essential witnesses." Such analysis by the military judge involved a factual determination. It is not for us to reinterpret the facts and substitute our judgment for that of the trial judge. *United States v. Burris*, 21 M.J. 140, 144 (C.M.A.1985), and cases cited therein.

■ We conclude that the military judge's interpretation of the defense demand as other than a request for delay was in accord with prevailing case law. *See e.g., United States v. Brodin*, 25 M.J. 580 (A.C.M.R.1987); *United States v. White*, 22 M.J. 631 (N.M.C.M.R.1986); *United States v. Butterbaugh*, 22 M.J. 759 (N.M.C.M.R. 1986); *United States v. Boden*, 21 M.J. 916 (A.C.M.R.1986). The fact that Government representatives may be misled or lulled into believing that the defense is either requesting or acquiescing in a delay does not provide a basis for denying an accused his right to a speedy trial. *United States v. Carlisle*, 25 M.J. 426, 428 (C.M.A.1988) (an accused's right to speedy trial survived even though defense counsel suggested a trial date beyond the allowable 120 day limit). *Accord United States v. Burris, supra*, 21 M.J. at 144–145. As the Court in *Carlisle* noted, "In our judgment, each day that an accused is available for trial is chargeable to the Government, unless a delay has been approved by either the convening authority or the military judge, in writing or on the record." 25 M.J. at 428. We have no evidence in this record that Captain Body was other than available for trial throughout the pretrial process. *See* R.C.M. 707(c)(6). The only delay purportedly granted by the convening authority

occurred on 24 October 1988 with respect to specific deposition dates, over two months after the defense's 18 August 1988 demand to produce witnesses or abate.

The military judge's ruling was consistent with a theme running through military case law that predates the adoption of R.C.M. 707. In short, we "start with the concept that all Article 32 time is chargeable to the Government, unless it can establish that one or more portions thereof are excludable because the 'attendant circumstances' were such that more time than 'normal' was required for each part." *United States v. Talavera*, 8 M.J. 14, 18 (C.M.A.1979), *citing United States v. Cole*, 3 M.J. 220, 227 (C.M.A.1977). The exception reflected in *Talavera* is incorporated in R.C.M. 707(c)(5). While it is conceivable that a certain limited amount of time might have been deducted from that time attributed to the Government in this case owing to the unusual problems encountered in deposing the child psychologist, we are unable to find any basis on the record for the military judge's arriving at a net calculation below the allowable 120 day limit. As the Court stressed in *Cook*, the Government bears the burden of bringing an accused to trial within 120 days and the further burden of making a proper record to explain why in the event that it does not do so. 27 M.J. at 215. The Government did not meet that burden in this instance.

There is no question that dismissal of the charges and specifications is an unsatisfactory and disquieting result in this case. An officer charged with serious offenses reflecting moral depravity will not stand trial on these accusations. This is a heavy price for society to pay because certain procedural rules were not observed with sufficient care. Based on our reading of the record, the Government representatives proceeded in a good faith fashion in their attempt not only to perfect the case but to insure that Captain Body was afforded pretrial due process. They were embarked upon a collision course with the 120 day rule. Ironically, the *Cook* opinion, which might have

forewarned them, was not issued until 24 October 1988, a date by which certain key scheduling decisions had already been made.

R.C.M. 707, as interpreted by appellate military courts, has, unfortunately, robbed our trial practice of a certain refined quality. The Army Court of Military Review has addressed this development and cautioned counsel in that service to rely on formal scheduling practices instead of "gentlemanly scheduling" of Article 32 hearings and trial dates, which some practitioners may heretofore have regarded as a revered tradition. *United States v. McCallister*, 24 M.J. 881, 889 (A.C.M.R.1987), *aff'd on related grounds*, 27 M.J. 138 (1988) (ordinary leave of defense counsel at a critical juncture does not, by itself, constitute an allowable delay). This is where current case law has brought us. It may not be where we should be. However, we do not see any major changes on the near horizon. When judicial guidance is displayed in capitals and underscored,[3] we can be certain that R.C.M. 707, tightly construed, will be fully enforced.

Having found that the military judge's findings were supported by the evidence of record and were not clearly erroneous, we affirm her findings and the ruling based thereon and deny the Government's appeal.

Senior Judge KASTL concurs.

Judge BLOMMERS (concurring in the result):

In regard to the principal period of time here in question (31 August 1988 to 18 January 1989), I believe this is a proper case for the application of R.C.M. 707(c)(3). It states that exclusions from the 120–day rule include: "Any period of delay resulting from a delay in a proceeding or a continuance in the court-martial granted at the request *or with the consent of the defense.*" (Emphasis added.) It would appear that taking depositions of key witnesses was beneficial to both parties in this case. They were requested by the defense,

---

**3.** *"ON DAY NUMBER 1, EVERYONE ASSOCIATED WITH A CASE SHOULD KNOW WHAT DAY WILL BE NUMBER 120." United States v. Carlisle*, 25 M.J. at 428.

and the Government acquiesced. How unfortunate. And, it need not have done so. Article 49(c)(2), UCMJ, 10 U.S.C. § 849(c)(2); R.C.M. 405(g)(1)(A); Mil.R.Evid. 804(a)(5). It is interesting to note that at the Article 39(a) session called to hear motions, the defense indicated on the record that it was not prepared to proceed to trial on the merits.

I can not disagree with Senior Judge Lewis' assessment of military case law. As I see it, the highlighted portion of Rule 707(c)(3) has been judicially legislated out of existence. I have one concern with the apparent *per se* rule we presently have; it may lead to prosecutorial gamesmanship regarding when charges are preferred. That undermines the spirit of our rules. *See* MCM, Part I, paragraph 3 (1984); R.C.M. 102; Mil.R.Evid. 102. I hope my concern proves to be unfounded.