**UNITED STATES**

v.

**Teras H. HURKO, 268 62 8987 Lance Corporal (E–3), U.S. Marine Corps.**

**NMCM 90 3067.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 17 March 1990.

Decided 9 March 1993.

LT R.M. Medeiros, JAGC, USNR, Appellate Defense Counsel.

LT Dwight N. Mersereau, JAGC, USNR, Appellate Government Counsel.

Before LARSON, C.J., and STRICKLAND and ORR, Senior Judges.

LARSON, Chief Judge:

In this appeal, the appellant contests his guilt of the worthless check and bad debt offenses of which he was convicted. We find merit in his position as to the first 20 worthless check specifications and set those aside. As to the remainder of the findings of guilty and the sentence, we affirm.

Charged with 54 specifications of making and uttering worthless checks in violation of Article 123a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 923a (Charge I) and one specification of dishonorable failure to pay a just debt in violation of Article 134, UCMJ, 10 U.S.C. § 934 (Charge II), the appellant was convicted, contrary to his pleas,[1] by a general court-martial composed of officer members, of the lesser included offense (LIO) of dishonorable failure to maintain sufficient funds under Article 134, UCMJ, 10 U.S.C. § 934 for each of the first 20 worthless check specifications. For the remaining 34 worthless check specifications, he was convicted as charged. He was also convicted of the single specification of dishonorable failure to pay a just debt under Charge II. The appellant was sentenced to confinement for nine months, total forfeitures, reduction to pay grade E–1 and a bad-conduct discharge.

First, the facts that pertain to our treatment of Charge I are as follows. Before his deployment to Okinawa, Japan, the appellant opened a checking account on 10 February 1989 with the Bank of Hawaii (called the "Okinawa" account) with an initial deposit of $275.00. He and his wife agreed that his paycheck would be deposited by direct deposit into her checking account with the Bank of Hawaii (called the "home" account). On each payday, she would transfer $200.00 to the Okinawa account. In addition, she would deposit the couple's federal and state tax refunds, anticipated to be approximately $1300.00 and to arrive near the end of March, into the Okinawa account.

The appellant acquired cash and merchandise by writing checks on his Okinawa account to various military outlets on the island. By 15 April, when the deposits he expected his wife to have made would have totalled $2300.00, he had written approximately $2000.00 worth of checks (including other minor debits such as service fees). Unfortunately, Mrs. Hurko had not kept up her end of the bargain and had deposited only $450.00 over that period. The result was that virtually all checks written by the appellant after 24 March were returned for insufficient funds.

The appellant and his wife apparently did not include any discussion of these financial matters in their periodic but brief phone calls. In addition, the appellant did not receive his mail during this period so he was unaware of the contents of the bank statements. In fact, there is no evidence that he became aware of his wife's failure to make the agreed deposits until on or shortly before 12 April. At that time, he made an account balance inquiry with his ATM card. A bank statement introduced at trial shows the balance to be zero at the time of this inquiry. From that fact, as well as the fact that he began making ATM withdrawals from the home account rather than the Okinawa account immediately after the inquiry, we can reasonably conclude that, by 12 April, he learned that his Okinawa account balance was zero and must have realized that his wife was not making the deposits as promised.

Despite the import of this information, the appellant intensified his check writing activity. From 16 April through 11 May, he wrote 36 bad checks for a total of $3362.00 on the Okinawa account. This total—especially when combined with the pre–16 April total—far exceeded the total of the deposits his wife had agreed to make. In early May, while on emergency leave in Hawaii, he first learned through a

---

1. The appellant attempted twice to enter guilty pleas to the worthless check offenses (Charge I) and the dishonorable failure to pay a just debt offense (Charge II). On both occasions, his pleas were rejected by the military judge—correctly we believe—as improvident. Article 45, UCMJ, 10 U.S.C. § 845.

phone call from his sergeant that he was accumulating worthless checks. In June, he began to make restitution to some of the victim payees. Others were made whole through automatic checkage of his pay.

At trial, the appellant maintained that he had no intent to defraud his payees because he believed that the checks would be covered by the deposits his wife had agreed to make. He applied this argument up to the point in time when the bounced check total began to exceed the expected deposits total. For the checks written after that time, he argued that he could not form the specific intent to defraud because of his nearly constant state of alcohol-induced intoxication after normal working hours when he wrote the checks.

In his instructions to the members, the military judge included the elements of the LIO of dishonorable failure to maintain sufficient funds as well as instructions on the existence of a mistake of fact defense with respect to the charged offense under Article 123a, UCMJ. He did not advise them that the mistake of fact defense applied as well to the LIO, nor was such an instruction requested by the defense.

■ We now turn to a brief discussion of the law that pertains to the offense of dishonorable failure to maintain sufficient funds. To prove the element of dishonor required for conviction of that offense, the accused's conduct must be characterized by deceit, evasion, false promises or other such culpable circumstances as deliberate nonpayment or gross indifference toward one's financial obligations. Manual for Courts–Martial, para 68c. *United States v. Downard*, 6 U.S.C.M.A. 538, 20 C.M.R. 254 (1955). There is no evidence of deceit, evasion, false promises or deliberate nonpayment in this record, at least none that appeared before he learned of his zero account balance on or about 12 April. The only question before the fact-finders at trial, and before us now, with respect to the first 20 specifications of Charge I is whether the appellant's conduct in failing to determine whether his wife was in fact making the agreed deposits or, in some other manner, to learn his actual account balance can be characterized as gross indifference.

■ "Gross" means "flagrant" or "extreme." *United States v. Hensley*, 26 M.J. 841 (A.C.M.R.1988). Failure to keep an accurate account of one's account balance is no more than simple negligence and, without more, does not rise to the level of gross indifference. *Id.* In particular, the case law is replete with examples where an honest reliance on anticipated deposits sufficient in amount to cover checks written on the account does not satisfy the element of dishonor. *See, e.g., United States v. Richardson*, 15 U.S.C.M.A. 400, 35 C.M.R. 372 (1965); *United States v. Brown*, 14 U.S.C.M.A. 635, 34 C.M.R. 415 (1964); *United States v. Bullock*, 12 U.S.C.M.A. 142, 30 C.M.R. 142 (1961); *Hensley*. Of course, the expectation of anticipated deposits must be believable. Whether the expectation is believable rests largely on how reasonable it is. *See United States v. Barnard*, 32 M.J. 530 (A.F.C.M.R.1990) (accused's assertion that he had relied on a $8000.00 mail-order loan to cover the checks he wrote was incredible on its face). The appellant's arrangement with his wife and the expectations that arose from that arrangement are reasonable, and no evidence was introduced that challenged the reasonableness of his belief.[2] Had the appellant's wife deposited the agreed amounts, all checks written through 15 April (specifications 1 through 20) would have been covered. His blind reliance on her keeping the agreement and his failure to even discuss it with her—despite ample opportunity to do so—were certainly careless and irresponsible but cannot be described as dishonorable. Accordingly, we find that the record does not prove the appellant's guilt of the offenses in specifications 1 through 20 of Charge I as a

---

2. The members, as well, apparently believed the appellant when he testified that he relied on his wife's deposit to cover the checks (for specifications 1 through 20). They found him not guilty of writing the checks with an intent to defraud after receiving an instruction from the military judge that they must do so if they find that he entertained an *honest* mistake of fact as to the balance of his account.

matter of law and fact.[3] Article 66(c), UCMJ, 10 U.S.C. § 66(c).

The Government's argument on appeal that the element of dishonor is established through the appellant's "deliberate ignorance" of his account balance deserves mention. Deliberate ignorance or avoidance of the presence of drugs has been used to establish the knowledge element required for conviction of drug possession. *United States v. Newman*, 14 M.J. 474 (C.M.A.1983), discusses this theory. In a case with the right facts, deliberate ignorance may supply the degree of culpability required to prove dishonor under Article 134, *if* it were proved that the accused deliberately avoided actual discovery of the existence of a fact that he knew was highly probable. *See United States v. Morales*, 577 F.2d 769 (2d Cir.1978). This is not that case. The appellant's simple failure to check his account balance earlier than he did or to ask his wife if she deposited the agreed amounts does not prove that he deliberately ignored the obvious. Furthermore, there is no evidence of record—until the appellant checked his account balance on or about 12 April—to indicate that it was highly probable that Mrs. Hurko was not making the deposits.

■ Next, we address the point made by this Court in *United States v. Call*, 32 M.J. 873 (N.M.C.M.R.1991), that the period during which the element of dishonorable conduct may be proved continues after initial presentment and dishonor and may in fact last as long as the check remains outstanding and presentable. Under that theory, one may look to the appellant's behavior after 12 April when he presumably learned the truth about his account and, if there is sufficient evidence of gross indifference to

the status of the checks identified in specifications 1 through 20, then we may affirm the findings of guilty. While we endorse this theory, it is not applicable in this case. Finding his balance to be zero on or about 12 April told the appellant nothing about the status of those checks. He could reasonably have concluded that the major reason he had no money in his account was because they had been honored. Furthermore, he was not notified that those particular checks had been dishonored until mid-May. Based on these facts of record, we are not inclined to find that he acted with gross indifference with respect to the checks in specifications 1 through 20 after they were presented and dishonored.

■ Finally, we turn to the sufficiency of the evidence to sustain the findings of guilty for specifications 21 through 55, *i.e.*, those checks written after his account balance inquiry near 12 April and after the expected $200.00 deposit on the 15 April payday. As noted earlier, it is inconceivable that the appellant could have believed that those subsequent checks would be covered. The particular question is whether his presumed knowledge of this fact, coupled with the other evidence of record, proves an intent to defraud. Considering the sheer volume of checks written (36 for $3362.00) in a short period of time (26 days) and the absence of any possibility of a new source of funds to cover these checks, we find the evidence sufficient to prove that the appellant wrote all checks after 15 April knowing they would not be honored and with the intent to defraud. Furthermore, we find no factual merit in the appellant's defense of voluntary intoxication. In conclusion, we are convinced beyond a reasonable doubt of the appellant's guilt of

---

**3.** Although not assigned as error on appeal, the military judge erred when he failed to instruct the members, *sua sponte,* that the mistake of fact defense also applied to the LIO under Article 134, which is another potential basis to set aside the findings of guilty to specifications 1 through 20 of Charge I. *United States v. Brown,* 14 U.S.C.M.A. 633, 34 C.M.R. 413 (1964). The error is not waived by defense counsel's failure to object. *United States v. Sellers,* 33 M.J. 364 (C.M.A.1991). A proper instruction on this defense for dishonorable failure to maintain suffi-

cient funds differs from a standard mistake of fact instruction for general intent crimes in that the mistake must be honest and not held as the result of gross indifference. *Id.* Because the members found beyond a reasonable doubt that the appellant's conduct was dishonorable—presumably based on gross indifference—it is probable that the appellant suffered no prejudice as a result of the absence of this instruction. In any event, we need not make this determination because we base our decision on the grounds set forth in the main text.

**1180**

specifications 21 through 55 of Charge I. Article 66(c), UCMJ. Likewise, we find that the appellant displayed gross indifference to the status of the outstanding debt that is the subject of Charge II, and we affirm his conviction of dishonorable failure to pay just debts under Article 134, UCMJ.

Accordingly, the findings of guilty to specifications 1 through 20 are set aside and dismissed. The remaining findings of guilty are affirmed. Applying the principles of *United States v. Sales*, 22 M.J. 305 (C.M.A.1986), and *United States v. Peoples*, 29 M.J. 426 (C.M.A.1990), we have reassessed the sentence and find it entirely appropriate for the remaining offenses of which the appellant stands convicted. The sentence is affirmed.

Senior Judges STRICKLAND and ORR concur.