**UNITED STATES**

v.

**Jon E. EDMOND, Fire Control Technician Third Class, U.S. Coast Guard.**

**CGCM 0063.
Docket No. 999.**

U.S. Coast Guard Court of
Military Review.

25 June 1993.

Trial Counsel: LCDR C.H. Allen, USCG.

Detailed Defense Counsel: CAPT G.J.D. Dean, USMC.

Assistant Defense Counsel: LT J.R. James, JAGC, USNR.

Appellate Defense Counsel: LCDR Allen Lotz, USCG.

Appellate Government Counsel: LT Garland M. Walker, USCGR.

Before Panel Four, BAUM, BASTEK and EDWARDS, Appellate Military Judges.

EDWARDS, Judge:

Contrary to his pleas, Appellant was convicted by officer and enlisted members of being an accessory after the fact to an attempted sodomy committed by a shipmate, committing an indecent act with a different shipmate, and dishonorably failing to maintain sufficient funds in his checking account to honor each of three

personal checks, in violation of Articles 78 and 134, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. §§ 878 and 934 (Supp. II 1990). The convening authority approved the adjudged sentence of reduction to pay grade E–1, forfeiture of all pay and allowances, confinement for one year, and a bad conduct discharge.

Appellant submits ten assignments of error, six of which merit discussion. Those six follow: Assignment I asserts that the Military Judge erred in not dismissing all charges with prejudice for lack of a speedy trial. Assignment II asserts that the Military Judge erred in denying a defense motion which sought his disqualification. Assignment III asserts that the Military Judge erred in refusing to dismiss Additional Charge V and its specification (indecent act with another), when it was multiplicious for pleading purposes with Additional Charge III and its specification (indecent assault). Assignment IV asserts that the three specifications of failing to maintain sufficient funds fail to state offenses. Assignment V asserts that the Military Judge erred in admitting irrelevant evidence of the post-offense status of Appellant's checking account. Assignment VI asserts that the evidence was not sufficient to prove beyond a reasonable doubt that Appellant was guilty of dishonorably failing to maintain sufficient funds in his checking account.

The case having been fully briefed and argued, we now affirm.

## I.

### FACTS

The most serious charges arose from an incident which occurred on 1 March 1990.

Appellant was assigned to USCGC HAMILTON (WHEC–715), which was undergoing a period of yard availability in Philadelphia, Pennsylvania. A going-away party was held in a local motel for one of Appellant's shipmates who was being transferred. During the party, Seaman (SN) L, a woman who served with Appellant in the cutter's deck force, consumed so much alcohol that she became quite ill. Several of the partygoers, including Appellant, took advantage of SN L's inebriated and sickened condition to engage in acts of sexual misconduct. Ultimately, the incident came to the attention of Coast Guard authorities, was investigated, and led to charges. Following dismissal of most of the charges by the Military Judge at the initial session of Appellant's trial, *see* Part II *infra*, Appellant issued three personal checks which were dishonored and thereafter served as the basis for an additional charge when the trial reconvened.

## II.

### SPEEDY TRIAL

Charges under Articles 81, 107, 120, 125, and 134, UCMJ, initially were preferred against Appellant on 25 June 1991, and he was informed of them on 5 July 1991. *See* Rules for Courts–Martial [hereinafter R.C.M.] 308. No pretrial restraint, R.C.M. 304, was imposed. An additional charge under Article 78, UCMJ, containing two specifications, was preferred on 18 November 1991. An Article 32, UCMJ, hearing was conducted on 18 and 19 November 1991. Thereafter, the Convening Authority referred charges under Articles 78, 81, 107, and 134, UCMJ, to a general court-martial. Trial commenced on 18 December 1991. Prior to arraignment,[1] Appellant moved to

---

**1.** R.C.M. 904 provides, in pertinent part, that arraignment "shall consist of reading the charges and specifications to the accused and calling on the accused to plead. The accused may waive the reading." The Discussion following R.C.M. 904 notes that "[a]rraignment is complete when the accused is called upon to plead; the entry of pleas is not part of the arraignment."

During the first session of Appellant's trial on 18 December 1991, the Military Judge stated to Appellant:

Now Petty Officer Edmond, I'm about to ask you how you plead to the Charges and Specifications. However before receiving pleas, I must advise you that any motions to dismiss any charge or to grant any other relief should be made at this time. I understand that Captain Dean [Detailed Defense Counsel] has several motions to make at this point. You may proceed.

Record at 20.

Thereafter, motions were made and argued extensively. However, Appellant never actually

dismiss all of the charges on the basis of denial of his right to a speedy trial.

In his Essential Findings and Ruling on Speedy Trial Motion, dated 21 December 1991, the Military Judge found the government accountable for 161 days of the 176 days which had elapsed since charges originally had been preferred on 25 June 1991. Accordingly, he also found that the government had violated R.C.M. 707(a)(1), which provides that an accused is to be brought to trial within 120 days of the preferral of charges. He did not find a violation of Appellant's right to a speedy trial under either the Sixth Amendment to the Federal Constitution or Article 10, UCMJ. Pursuant to R.C.M. 707(d), the Military Judge dismissed the charges preferred on 25 June 1991 (Articles 81, 107, 120, 125, and 134, UCMJ), without prejudice to the government's right to reinstitute proceedings against Appellant for the same offenses. He denied that portion of the motion seeking dismissal of the additional charge under Article 78, UCMJ.

■ Appellant argues first that the Military Judge should have dismissed the additional charge under Article 78, UCMJ, because the government had the information necessary to prefer that charge when he was charged with the other offenses on 21 June 1991. Appellant cites *United States v. Boden*, 21 M.J. 916 (A.C.M.R.1986), and *United States v. Honican*, 27 M.J. 590 (A.C.M.R.1988), in support of his position. Both *Boden* and *Honican* are inapposite. In each, the accused was in pretrial confinement for other offenses when an additional charge was preferred. Under the

version of R.C.M. 707(d) then in effect and *United States v. Burton*, 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971), the Army Court of Military Review held that, as a consequence of being in pretrial confinement, the 90–day period for bringing the accused to trial on the additional charge began when the government possessed "substantial information on which to base preferral of that charge." *United States v. Boden*, 21 M.J. at 918. Unlike either of the accused in *Boden* and *Honican*, Appellant in this case never was placed in pretrial confinement. Accordingly, the condition predicate for starting the speedy trial clock, *i.e.*, substantial information *while Appellant was in pretrial confinement*, never was satisfied.

Appellant next contends that, in dismissing the 21 June 1991 charges without prejudice, rather than with prejudice, the Military Judge abused his discretion because he did not weigh properly the factors listed in R.C.M. 707(d). Appellant also contends that, in any event, the lack of a speedy trial violated his Sixth Amendment rights.

Both the government and Appellant agree that the current version of R.C.M. 707 applies. It was included in Executive Order 12767 issued by the President on 27 June 1991 and published at 56 Fed.Reg. 30284, which subsequently was published as Change No. 5 to the Manual for Courts–Martial, United States 1984 [hereinafter MCM] on 15 November 1991. Section 4.d. of the Executive Order provides that the amended R.C.M. 707 was to apply "only to cases in which arraignment occurs on or after 6 July 1991." As arraignment oc-

---

was asked to plead nor did he do so on that date. Accordingly, there was no arraignment on 18 December 1991.

Trial reconvened on 23 March 1992. In the meantime, as discussed *infra*, the Military Judge had dismissed the charges under Articles 81, 107, 120, 125, and 134, which were the ones preferred on 25 June 1991. The additional charge under Article 78, UCMJ, which had been preferred on 18 November 1991, was not affected. New charges had been preferred and referred to the same court-martial. The Military Judge correctly explained to Appellant that he could not be tried on the new charges without his consent. See R.C.M. 601(e)(2). Appellant so consented and was arraigned properly on all

of the charges, including the charge under Article 78, UCMJ.

Between 18 November 1991 and Appellant's arraignment on 23 March 1992, 126 days elapsed. As he had not been arraigned at the 18 December 1991 trial session, a motion for dismissal of the Article 78, UCMJ, charge might have been made by Appellant under R.C.M. 707(a)(1) and 707(b)(1). None was. It appears that no one realized that Appellant had not been arraigned at the session on 18 December 1991, and that all parties acted as though he had pled not guilty. In any event, while not condoning the failure to hold a proper arraignment, we find that Appellant has waived this issue. R.C.M. 905(e) and 907(b)(2).

curred on 23 March 1992, *see* n. 1 *supra,* we also agree that the current version applies.

R.C.M. 707(d) now provides:

Remedy. A failure to comply with the right to a speedy trial will result in dismissal of the affected charges. This dismissal will be with or without prejudice to the government's right to reinstitute court-martial proceedings against the accused for the same offense at a later date. The charges must be dismissed with prejudice where the accused has been deprived of his or her constitutional right to a speedy trial. In determining whether to dismiss charges with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case that lead to dismissal; the impact of a reprosecution on the administration of justice; and any prejudice to the accused resulting from the denial of a speedy trial.

■ Recognizing that, if he found a violation of Appellant's constitutional right to a speedy trial, he would have no alternative but to dismiss with prejudice any of the affected charges, the Military Judge first conducted a "Sixth Amendment Speedy Trial" analysis. Citing *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), *United States v. Grom,* 21 M.J. 53 (C.M.A.1985), and *United States v. Johnson,* 17 M.J. 255 (C.M.A.1984), the Military Judge addressed four factors, *viz.,* length of delay, reason for delay, Appellant's assertion of his right to a speedy trial, and prejudice to Appellant.

The Military Judge found the length of delay, 176 days, while beyond the 120-day standard of R.C.M. 707, to be "within the 'neutral' range for determining a 6th Amendment speedy trial violation."

With respect to reasons for delay, the government offered several, including unavailability of witnesses due to a coast-to-coast change of homeport of Appellant's cutter and the earlier trial of two co-accused in order to make them available to testify at Appellant's trial. Additionally, consistent with past practice under the former version of R.C.M. 707, the Convening Authority had authorized several periods of pretrial delay, but did so retroactively. The Military Judge ruled that the current version of R.C.M. 707(c) precludes retroactive approval of periods of delay. Nevertheless, he found no bad faith on the part of government counsel because "this issue was *not* clearly settled" when the government counsel obtained retroactive approval for periods of delay from the Convening Authority. Accordingly, the Military Judge found that this factor "weigh[ed] in favor of the government in [his] balancing."

Appellant did demand a speedy trial on 27 August 1991 and the Military Judge found this factor to favor Appellant's position.

Finally, with respect to the fourth factor, prejudice to Appellant, the Military Judge found only "slight" prejudice, because Appellant had not been restrained in any fashion, there was no evidence that his defense had been hindered by the delay, he had continued to receive pay and allowances, and there was no significant evidence that Appellant's anxiety or stress exceeded that of any other accused facing similar charges. Appellant's security clearance had been withdrawn, but he had been allowed to perform the normal duties of a person in his rating who had lost such a clearance.

Upon weighing all of these factors, the Military Judge "[found] them less compelling than the factors evaluated by the Court of Military Appeals in [*United States v. Grom, supra*], where the court held that there was no denial of the 6th Amendment right to a speedy trial." Accordingly, the Military Judge found no Sixth Amendment violation.

We concur with the Military Judge's reasoning and his conclusion. Applying the abuse of discretion standard of *United States v. Travers,* 25 M.J. 61 (C.M.A.1987), we find that he did not abuse his discretion in denying that portion of Appellant's speedy trial motion seeking dismissal under the Sixth Amendment.

Turning to the issue of dismissal with or without prejudice, we note that the Military Judge's essential findings also addressed each of the four specially listed factors in R.C.M. 707(d). With respect to the first, seriousness of the offenses, the Military Judge found that Appellant had been charged with what clearly were serious offenses. As to the second, the facts and circumstances of the case that led to dismissal, the Military Judge found no evidence of intentional government noncompliance with R.C.M. 707, but instead a "good faith, though misguided, reliance on an erroneous interpretation of [the] 'new' RCM 707." With respect to the third factor, the impact of a reprosecution on the administration of justice, the Military Judge found this to be "neutral," since dismissal with prejudice would not have contributed to a better or fairer administration of military justice within the Coast Guard. Finally, the Military Judge found that the fourth factor, prejudice to the accused, favored dismissal without prejudice since Appellant had not been harmed by the 41–day length of the R.C.M. 707 violation. Again, we find that the Military Judge did not abuse his discretion in deciding to dismiss without prejudice.

### III.

### DISQUALIFICATION OF THE MILITARY JUDGE

Appellant asserts that, pursuant to R.C.M. 902(a) and (b)(1), the Military Judge should have recused himself in order to avoid the "appearance of impartiality" (sic), because he had served as the military judge in the courts-martial of three of Appellant's co-accused.

At trial, Appellant twice challenged the Military Judge for cause, at the initial session on 18 December 1991, and the second session on 23 March 1992. In both instances the Military Judge denied the challenge. He explained that he had no knowledge of any of the facts concerning any of the accused except that which was gained during his participation in their earlier trials. Anything which he had heard in a prior case he always disregarded in a subsequent trial, and he intended to do the same in Appellant's trial. Finally, the Military Judge stated that any determination he might make with respect to Appellant would be based entirely upon evidence presented at his own trial.

Appellant argues for reversal because of the Military Judge's acceptance of a guilty plea by one of Appellant's co-accused to a charge of accessory after the fact to indecent assault by Appellant, and because of the "chilling effect" upon that same co-accused's testimony purportedly caused by the presence on the bench of the same military judge who had tried that co-accused.

The facts in this case most closely resemble those found in *United States v. Oakley*, 33 M.J. 27 (C.M.A.1991). In *Oakley*, the military judge presided at a trial with members after he previously had presided at the trials of two of the accused's "alleged cohorts." *Id.* at 33. One had pled guilty in a trial by military judge alone, and the other had pled guilty in a trial with members. The Court of Military Appeals held that the military judge was not required to recuse himself where there was no "affirmative indication in the record that [the accused] would have withdrawn that request [for trial with members] if his recusal motion had been granted," *id.* at 34, the military judge's findings in the earlier trials were based upon evidence presented solely in those trials, and the military judge clearly demonstrated his intention and ability to disregard that other evidence and rely strictly upon evidence presented in the accused's trial.

With respect to forum, during *voir dire* of the Military Judge at the initial trial session, he asked Detailed Defense Counsel whether Appellant was considering trial by military judge alone. Defense Counsel declined to answer the question at that time. After the challenge against the Military Judge had been denied the first time, Appellant elected trial with members. Neither Appellant nor Detailed Defense Counsel made any statement to the effect that the denial of the challenge had led to the decision to go forward with members. Ac-

cordingly, as in *Oakley*, there does not appear to be any basis for concluding that the denial of the challenge to the Military Judge for cause had any effect on Appellant's choice of forum.[2]

■ We also conclude that there is no basis for finding that the Military Judge was any less than completely forthright in stating his belief that he could hear Appellant's case fairly and without regard to the earlier trials. This clearly is not a case in which the Military Judge had "formed an intractable opinion as to the guilt of the accused." *United States v. Winter*, 35 M.J. 93, 95 (C.M.A.1992). Similarly, as "fundamental legal principles require judges to decide cases based on evidence presented at trial," *id.*, the Military Judge's assurances that he would do precisely this must be accorded great weight. We find no merit in Appellant's "chilling effect" argument because there is no evidence the Military Judge's participation in earlier trials had any untoward effect upon witnesses in Appellant's trial. This argument also fails because it is presumed that counsel had access to earlier testimony and would themselves have been aware of and quick to point out any witness inconsistencies from one trial to the next.

### IV.

### MULTIPLICITY OF CHARGES

■ The single specification under Additional Charge III alleges that Appellant committed an indecent assault under Article 134, UCMJ, against Yeoman Third Class L [SN L apparently had been advanced to Yeoman Third Class (YN3) by the time charges were preferred]. The single specification under Additional Charge V alleges the same facts as Additional Charge III but charges that Appellant committed an indecent act under Article 134, UCMJ, with YN3 L.

At trial, Detailed Defense Counsel moved to dismiss Additional Charge V as multiplicious with Additional Charge III, contend-

ing that the alleged indecent act was a lesser included offense of the alleged indecent assault. The government responded that Additional Charge V alleged a consensual indecent act while Additional Charge III alleged a nonconsensual indecent assault; that the case law was unclear whether a consensual indecent act could be found to be a lesser included offense of indecent assault; and that, based upon exigencies of proof, the members might find that SN L had consented to the acts allegedly committed by Appellant, rather than that she had been the victim of them.

The Military Judge denied Appellant's motion. He ruled that, although Additional Charge V was a lesser included offense of Additional Charge III, there was not an unreasonable multiplication of charges and that submitting both charges to the members as drafted would be clearer and less likely to lead to confusion on their part. He later instructed the members twice about the distinctions between the two charges, both when he first informed them about the charges and again prior to deliberations. In giving the first set of instructions to the members, the Military Judge stated that Additional Charge V was a lesser included offense of Additional Charge III. He repeated this statement in the latter instructions and he also explained to the members that they were to vote on Additional Charge III first and to consider Additional Charge V only if they acquitted Appellant of Additional Charge III. In the event they convicted him of Additional Charge III, the members were neither to vote nor make any finding with respect to Additional Charge V. We test the denial of Appellant's motion to·dismiss for abuse of discretion. *United States v. Howard*, 24 M.J. 897 (C.G.C.M.R.1987).

The Discussion following R.C.M. 307(c)(4) provides that

> [w]hat is substantially one transaction should not be made the basis for an unreasonable multiplication of charges.... There are times, however,

---

**2.** Even if Appellant had stated that the Military Judge's denial of his challenge had led him to elect trial by members, we are not convinced

that this single change in the facts of this case would necessitate altering our decision on the issue of the Military Judge's disqualification.

when sufficient doubt as to the facts or the law exists to warrant making one transaction the basis for charging two or more offenses. In no case should both an offense and a lesser included offense thereof be separately charged.

For the purpose of deciding this issue, we shall assume that the Military Judge was correct in treating the alleged indecent acts charge as a lesser included offense of the indecent assault charge. *See* ¶ 63d.(2), Part IV, MCM.

The Military Judge made it as clear as possible to the members that the two charges grew out of one set of alleged circumstances, that the only significant distinction between them was that of consent on the part of SN L, and that they could not convict Appellant of both charges, although they could acquit him of both. The fact that the members acquitted Appellant of Additional Charge III but convicted him of Additional Charge V lends credence to our belief that the members did understand and follow the Military Judge's instructions. We also are satisfied that allowing the members to consider both charges in the order in which he instructed did help to avoid confusion. In these circumstances, we find no abuse of discretion.

## V.

### THE DISHONORED CHECK OFFENSES

■ Appellant originally was charged under Article 123a, UCMJ, with one specification each of making three checks with intent to defraud. A copy of the Charge Sheet was served properly on Appellant prior to trial. Before arraignment, each specification was amended to charge a violation of Article 134, UCMJ, for making and uttering the checks and thereafter dishonorably failing to maintain sufficient funds for payment upon presentation. Each specification was amended by the Trial Counsel who made "pen and ink" changes. In so doing, however, he failed to include the word, "dishonorably," in the amended specifications. Appellant now maintains that each specification fails to state an offense and that his conviction

under the charge and each specification should be set aside.

"A specification is sufficient if it alleges every element of the charged offense expressly or by necessary implication." R.C.M. 307(c)(3). *See also United States v. Sell*, 3 U.S.C.M.A. 202, 11 C.M.R. 202 (1953). Appellant does not contend that the original Article 123a, UCMJ, specifications were drafted incorrectly, and our own review confirms that each satisfies the requirements of R.C.M. 307(c)(3).

¶ 49d.(1), Part IV, MCM, provides that the making and uttering of a check and dishonorably failing thereafter to maintain sufficient funds is a lesser included offense under Article 123a, UCMJ. It is clear from the record that Appellant had been apprised properly of the greater offenses, *i.e.*, those alleged under Article 123a. It also is apparent that he had been involved in informal negotiations which led to the government's decision to charge him with only the lesser included offenses under Article 134, UCMJ. In such circumstances, we have no trouble concluding that Appellant has suffered no harm and is not entitled to relief for the government's failure to include the word, "dishonorably," in the three Article 134, UCMJ, specifications. *Cf. United States v. Watkins*, 21 M.J. 208 (C.M.A. 1986) (An unauthorized absence specification missing the words, "without authority," is defective, although not fatally so).

■ Appellant next contends that the Military Judge erred in admitting Prosecution Exhibit 10, a copy of three bank statements for his account dated 17 December 1991, 17 January 1992, and 18 February 1992, respectively. He argues that, inasmuch as the three dishonored checks were issued on 3, 9, and 12 January 1992, and presented for payment between those dates and 14 January 1992, the December and February statements should have been excluded under Rule 402, Military Rules of Evidence [hereinafter Mil.R.Evid]. Appellant also argues the February statement should have been excluded under Mil. R.Evid. 403 and 404(b) because it indicates the existence of other dishonored checks.

In attempting to prove Appellant's guilt of the three dishonored check offenses, the government was required to demonstrate that his failure to place or maintain sufficient funds in his checking account "was dishonorable." ¶ 68b.(4), Part IV, MCM. "Mere negligence in maintaining one's bank balance is insufficient for this offense, for the accused's conduct must reflect bad faith or gross indifference in this regard." ¶ 68c., Part IV, MCM.

The Military Judge admitted Prosecution Exhibit 10 over defense objection.[3] In so doing, he stated that "I find that the February statement is probative of the Accused's attitude toward his ... checking account during the period in question and is probative of whether or not that attitude was grossly indifferent or grossly negligent or whether or not his conduct with respect to that bank account was dishonorable." Record at 106, Vol. III. Later, he gave a limiting instruction on the use of Prosecution Exhibit 10, specifically admonishing the members to use the February statement

> for the limited purpose of its tendency, if any, to show the accused's state of mind or attitude with respect to the handling of his checking account transactions....
>
> ....
>
> You may not, and I repeat, you may not, use this evidence to conclude that the accused somehow is a bad person, and that, therefore, he must be guilty of these offenses that are charged with respect to the bad checks, or that he is a bad person and therefore he must be somehow guilty of the other offenses with which he is charged.

Record at 135–136, Vol. IV.

We have reviewed the December, January, and February statements ourselves.

The December statement reveals one instance when Appellant overdrew his account by issuing a check when he had insufficient funds. The February statement reveals that Appellant not only overdrew his account, but that he had four "returned check charge[s]" between 24 and 30 January 1992. The January statement, which Appellant does not contest, reveals that Appellant had four other "returned check charge[s]," apparently including the three for which he was convicted.

■ We do not find that the Military Judge abused his discretion in admitting all three statements. The December statement was at least minimally relevant under Mil.R.Evid. 402 to demonstrate that Appellant had issued at least one check which would have overdrawn his account but for the "overdraft protection" which his bank then was willing to extend to him. The February statement was relevant in showing a continuing pattern, which first began in late December of 1991, of Appellant's issuing checks without having sufficient funds to cover them. Under Mil.R.Evid. 404(b), the February statement was admissible to demonstrate the "absence of mistake or accident" on the part of Appellant, as well as his apparent lack of concern about maintaining a sufficient balance in his checking account. *Cf. United States v. Ferguson,* 29 M.J. 559 (A.F.C.M.R.1989) (In circumstances similar to these, "'attitude' becomes one of the 'other purposes' for which uncharged misconduct is admissible under Mil.R.Evid. 404(b)." *Id.* at 561). Finally, under Mil.R.Evid. 403, we do not believe that the probative value of Prosecution Exhibit 10 was "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the members, or by considerations of undue

---

**3.** The record is unclear as to the precise nature of Appellant's objection(s) to admission of this exhibit at trial. The defense first made known its objection to the exhibit during a session conducted pursuant to Article 39(a), UCMJ. The next morning, an "off the record" conference was conducted by the Military Judge pursuant to R.C.M. 802. Back on the record, the Military Judge later alluded to this conference and Appellant's stated intention to object to admission of Prosecution Exhibit 10, but did not state the basis for the objection. It does appear that Appellant's sole objection was to the February bank statement and that it was based upon Mil.R.Evid. 404(b). Were this the case, we would deem waived Appellant's current assertions under Mil.R.Evid. 402 and 403 and his objection to the December statement. As it is not certain, we shall treat this issue as though Appellant did object to both the December and February statements and did cite all three Rules of Evidence at the time he initially objected.

delay, waste of time, or needless presentation of cumulative evidence."

■ Appellant's final assertion with respect to the three dishonored check charges is that the government failed to present adequate evidence to prove, beyond a reasonable doubt, two of the five elements of dishonorable failure to maintain sufficient funds, *viz.*, that his failure to maintain sufficient funds was dishonorable, ¶ 68b.(4), Part IV, MCM, and that his conduct was prejudicial to good order and discipline, ¶ 68b.(5), Part IV, MCM. We disagree.

The test for legal sufficiency is whether, considering the evidence in a light most favorable to the government, the trier of fact rationally could find the existence of every element of the alleged offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The test for factual sufficiency is whether, after weighing the evidence in the record of trial and making allowances for our not having observed the witnesses personally, we are convinced of Appellant's guilt beyond a reasonable doubt. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Turner*, 25 M.J. 324 (C.M.A.1987).

■ The Navy–Marine Corps Court of Military Review recently had occasion to address the sufficiency of the evidence issue in two cases involving the failure to maintain sufficient funds. We find our sister Court's discussions of the issues particularly instructive and helpful. *See United States v. Wright*, (N.M.C.M.R. Dkt. No. 91 0329 7 April 1993); *United States v. Hurko*, 36 M.J. 1176 (N.M.C.M.R.1993).

A charge of dishonorably failing to maintain funds requires some act of deceit, wilful evasion, bad faith, false promises, or other distinctly culpable circumstances showing a deliberate nonpayment or grossly indifferent attitude toward one's just obligations. The gist of the offense of dishonorably failing to maintain funds lies in the conduct of the accused *after* uttering the instrument, conduct which must reflect bad faith or gross indifference. (citations omitted).

*United States v. Wright, supra,* slip op. at 5.

■ In *Wright*, the Court set aside a guilty plea to an insufficient funds charge because the providence inquiry established that the accused, who knew at the time he issued the checks that he did not have sufficient funds, had intended to deposit money to cover them by the time of presentment to his bank. The Court went on to note that

*Simple negligence, inadvertence or indifference in maintaining sufficient funds is not an offense in military law.* [The accused's] inability to cover the checks may have been caused by a negligent reliance on [an unnamed] source, not a dishonorable refusal to cover the checks, or even unforeseen events that could not reasonably have been foreseen. (citations omitted) (emphasis added).

*Id.* slip op. at 6.

In *United States v. Hurko*, the Navy–Marine Corps Court faced a similar situation involving the issuance of numerous checks over a short period of time, all of which were dishonored. In this case, however, the evidence established that the accused did have a named source who was supposed to have deposited funds into his account, *i.e.*, his wife. The Court set aside the findings of guilty of the first 20 dishonorable failure to maintain sufficient funds specifications, but affirmed 34 other similar specifications. The Court held that the accused's belief that his wife would deposit sufficient funds to cover the first 20 checks was "reasonable, and no evidence was introduced that challenged the reasonableness of his belief.... His blind reliance on [his wife was] ... certainly careless and irresponsible but cannot be described as dishonorable." 36 M.J. at 1178.

In affirming the remaining specifications, the Court found it

inconceivable that the [accused] could have believed that those subsequent checks would be covered.... Considering the sheer volume of checks written (36 for $3362.00) in a short period of time (26 days) and the absence of any possibil-

ity of a new source of funds to cover these checks, we find the evidence sufficient to prove that the [accused] wrote all [the remaining] checks ... knowing they would not be honored and with intent to defraud.

*Id.* at 1179.

In the present case, the evidence reveals that Appellant had made an Automatic Teller Machine (ATM) inquiry on 26 December 1991, which advised him that he had $3.44 in his account. Between that date and 2 January 1992, $595.17 was deposited into his account, leaving a total of $598.61 available to be drawn against. Appellant issued ten checks totalling $559.53 and withdrew $188.00 from an ATM without having made any additional deposits. Three of these checks, each of which was dishonored, were the ones for which he was charged. The total of all the checks and withdrawals was $747.53. Accordingly, Appellant attempted to "overdraw" his account by $148.92. There was no evidence that Appellant's bank was willing to permit such a substantial overdrawing of his account. Appellant's only explanation at trial was that he believed he "did have money in there to cover it."

Unlike the situation in either *United States v. Wright* or *United States v. Hurko, supra,* Appellant could not have held a *reasonable* belief that *all* of the checks would be honored. At best, the most he might have hoped for was that some of them might not be presented for payment before he could make his next deposit. Such an attitude goes well beyond "simple negligence, inadvertence or indifference in maintaining sufficient funds," *United States v. Wright,* (N.M.C.M.R. Dkt. No. 91 0329 7 April 1993) unpublished slip op. at 6, and does reflect "bad faith or gross indifference in this regard." ¶ 68c., Part IV, MCM.

 Appellant argues that, in any event, his conduct was not to the prejudice of good order and discipline or of a nature to bring discredit upon the armed forces. This argument is premised upon the testimony of the Exchange Officer at the Coast Guard Exchange where the three checks had been cashed, who did state that these were three of many which had been dishonored, Appellant ultimately made good on them, and returned checks were a normal part of doing business. However, the Exchange Officer also testified that such dishonored checks create cash flow problems for the exchange, and, if never paid, decrease the profits of the Exchange and, ultimately, the amount which the Exchange can contribute to the Morale Fund. We are satisfied that this testimony adequately establishes both conduct to the prejudice of good order and discipline, ¶ 60c.(2)(a), Part IV, MCM, and conduct of a nature to bring discredit upon the armed forces, ¶ 60c.(3), Part IV, MCM. We reject Appellant's "cost of doing business" argument. It would, were we to agree with it, effectively allow an "open season" on the funds of the Coast Guard Exchange System.

Accordingly, we find the evidence legally and factually sufficient to support Appellant's convictions for dishonorably failing to maintain sufficient funds.

## VI.

### ACTION

The remaining asserted issues are resolved adversely to Appellant. We independently have reviewed the appropriateness of the sentence, *United States v. Snelling,* 14 M.J. 267 (C.M.A.1982), and find it appropriate. Accordingly, the findings and the sentence, as approved below, are affirmed.

Chief Judge BAUM and Judge BASTEK concur.