# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**F.D. MITCHELL, J.A. FISCHER, B.T. PALMER**
**Appellate Military Judges**

## UNITED STATES OF AMERICA

**v.**

## SABRIE C. ASHBURN
## AVIATION BOATSWAIN'S MATE HANDLING THIRD CLASS (E-4),
## U.S. NAVY

## NMCCA 201500038
## SPECIAL COURT-MARTIAL

**Sentence Adjudged:** 18 November 2014.
**Military Judge:** CAPT Andrew H. Henderson, JAGC, USN.
**Convening Authority:** Commanding Officer, Naval Base Kitsap, Bremerton, WA.
**Staff Judge Advocate's Recommendation:** LTJG Lauren E. Brinker, JAGC, USN.
**For Appellant:** LT Jacqueline Leonard, JAGC, USN; LT Jennifer M. Pike, JAGC, USN.
**For Appellee:** LT James M. Belforti, JAGC, USN; CDR Eric Roper, JAGC, USN.

**24 September 2015**

---------------------------------------------------------
### OPINION OF THE COURT
---------------------------------------------------------

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

PER CURIAM:

A military judge sitting as a special court-martial convicted the appellant, contrary to her pleas, of one specification of making a false official statement, three specifications of writing fraudulent checks, and four

specifications of dishonorably failing to pay debts in violation of Articles 107, 123a, and 134 Uniform Code of Military Justice, 10 U.S.C. §§ 907, 923a, and 934. Following announcement of findings, the military judge, *sua sponte*, merged Specifications 2, 3, and 4 of Charge II (Art. 123a, UCMJ) with Specifications 2, 3, and 4 of Charge III (Art. 134, UCMJ) for sentencing purposes. The military judge sentenced the appellant to 280 days' confinement, reduction to pay grade E-2, and a bad-conduct discharge. The convening authority (CA) approved the sentence as adjudged and, except for the bad-conduct discharge, ordered the sentence executed.

The appellant raises three assignments of error: (1) that the appellant's convictions for check fraud were factually insufficient, (2) that the appellant's convictions for failing to pay a debt were factually insufficient, and (3) that the military judge abused his discretion when he failed to find the specifications under Charges II and III were an unreasonable multiplication of charges for findings.[1]

After careful consideration of the record of trial, the appellant's assignments of error, and the pleadings of the parties, we find that the trial court erred by failing to dismiss Specifications 2, 3, and 4 under Charge III and we take corrective action in our decretal paragraph. Following our corrective action we find that no error materially prejudicial to the substantial rights of the appellant remains. Arts. 59(a) and 66(c), UCMJ.

## Background

During 25-28 May 2014, the appellant wrote 13 personal checks totaling over $27,000.00, to the Army and Air Force Exchange (AAFES) at Joint Base Lewis-McCord (JBLM). Items purchased included televisions, computers, electronic gaming devices, furniture, appliances, and jewelry. Similarly, from on 25-26 May 2014, the appellant wrote four checks, totaling $286.25 and a $47.40 check to FM and PJ respectively.[2] Additionally, from 23-27 October 2013, the appellant wrote six checks totaling $3,104.04 to the Navy Exchange (NEX) at Naval

---

[1] The appellant asserts no assignments of error in relation to Charge I and the specification thereunder.

[2] These checks comprise the offenses listed in Specifications 2, 3, and 4 of Charge II and Specifications 2, 3, and 4 of Charge III.

2

Base Kitsap.[3]  Each check was written against insufficient funds in a Navy Federal Credit Union (NFCU) account, for which she was the only account holder.

A forensic document examiner expert concluded the maker's signatures on the checks bore a "strong probable," or "probable" match to the appellant's signature.  The appellant admitted writing all of the May 2014 checks when interviewed by law enforcement.

Additional facts necessary for the resolution of particular assignments of error are included below.

## Factual Sufficiency

The appellant's first and second assignments of error claim the findings of guilt to both Charge II and Charge III are factually insufficient.  Under Article 66(c), UCMJ, we conduct a *de novo* review of factual sufficiency of each case before us. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses," we are ourselves convinced of the accused's guilt beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987); *United States v. Reed*, 54 M.J. 37, 41, (C.A.A.F. 2000).  "Such a review involves a fresh, impartial look at the evidence, giving no deference to the decision of the trial court on factual sufficiency beyond the admonition in Article 66(c), UCMJ, to take into account the fact that the trial court saw and heard the witnesses." *Washington*, 57 M.J. at 399.  Proof beyond a reasonable doubt does not mean, however, that the evidence must be free from conflict.  *United States v. Goode*, 54 M.J. 836, 841 (N.M.Ct.Crim.App. 2001).

## Charge II – Article 123a, UCMJ

The appellant argues the Government failed to prove she knew she had insufficient funds in her account and that she possessed the intent to defraud with each of the specifications under Charge II.[4]  The appellant claims a mistake of fact defense

---

[3] These checks comprise the offenses listed in Specification 1 of Charge III.

[4] The elements to make, draw, or utter a check without sufficient funds are: 1) the accused made, drew, uttered, or delivered a check for the payment of money payable to a named person or organization; 2) that the accused did so for the purpose of procuring an article or thing of value; 3) that the act

based on her honestly held belief that her account had or would have sufficient funds in her bank account to cover her checks. As support, she offered the following at trial: (1) she had poor math skills; (2) her mother was previously a joint account holder who made occasional deposits to prevent the appellant from overdrawing her account; and (3) her husband[5] was a "con artist" who falsely told her that he had a million-dollar trust fund, that his adoptive mother periodically gave him money, and that he received $32,000.00 from his mother before the appellant wrote the May 2014 checks. A defense forensic psychology expert testified the appellant had difficulty with abstraction and that numbers, math, and banking would be challenging for her; that she had a low IQ; that she was gullible, easily manipulated, immature, insecure, and a follower; and that she had a strong desire to please those whom she loves.[6]

Beyond the largely unchallenged evidence that between 25-28 May 2014 the appellant wrote more than $27,000.00 in unfunded checks, the Government presented evidence that the appellant's base pay was $2,328.00; that her husband was unemployed and she had no other income sources; that on 25 May 2014, (before she wrote the bad checks to AAFES, FM, and PJ's) she attempted to write two checks totaling $3,779.00 at the NEX, but both were immediately declined due to her NEX checking history; that in 2013, the appellant and her husband used various installment contracts to purchase four cars worth $95,000.00 before each was subsequently repossessed; that she previously wrote checks on insufficient funds resulting in over $3,800.00 in NFCU returned check fees; that before writing the May 2014 checks, she had received financial and budget counseling; that she earned a "B" grade in a 2010 college algebra class; that in November/December 2013 her father-in-law told her that her husband did not have a trust fund or an adoptive mother, and that there was no inheritance or money from his family; that when first

---

was committed with the intent to defraud; and 4) that at the time of the making, drawing, uttering, or delivering the instrument the accused...knew that the accused had not or would not have sufficient funds in or credit with the bank...upon presentment. MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), Part IV, ¶ 49(b)(1).

[5] The appellant's marriage was later annulled after it was discovered that her husband was still married to another woman.

[6] On cross-examination the defense expert also acknowledged the appellant has feelings of inadequacy, overcompensates by denying problems, that she sees herself as being unjustly blamed for others problems, and that she is impulsive. Record at 388. He also determined the appellant was competent to stand trial. *Id*. at 374.

interviewed by law enforcement she variously explained she wrote the May 2014 checks because she expected money from her husband's adoptive mother, a trust fund, and a tax refund, none of which was true; that she admitted she did not verify whether sufficient funds were in the account before she began writing checks; and that she had check writing problems in the past because her husband had falsely told her money was in the account.

Following our review of the above evidence, and applying the standards in *Turner* and *Reed*, we conclude the first two elements of the charged offense are met; the appellant uttered all the checks for which she was found guilty and did so for the purpose of procuring articles or things of value. Art. 123a, UCMJ. As to the remaining elements, the Government bears the burden of disproving the appellant's asserted mistake of fact beyond a reasonable doubt. RULE FOR COURTS-MARTIAL 916(b), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.). After carefully reviewing the record, and being especially mindful of the evidence as highlighted above, we find the Government has met its burden.[7] The appellant wrote the checks; she did so knowing she had insufficient funds in the account; and did so with the intent to defraud. Her assertion that she wrote the checks trusting that her unemployed husband had or would put funds in her account is, under the circumstances, neither reasonable nor believable.

Additionally, the appellant claims the military judge erred by applying the Article 123a, UCMJ "statutory rule of evidence,"[8]

---

[7] Prior to the court-martial closing for deliberations, the trial defense counsel asked the military judge to issue "special findings . . . rather than just a simple . . . guilty or not guilty plea (sic)." Record at 429. The military judge issued his special findings on 6 January 2015, and noted that findings on special matters were not included because they were not requested by the defense. He further states he "considered all legal and competent evidence, the applicable presumptions, [and] the reasonable inferences to be drawn therefrom . . . ." Appellate Exhibit XXII at 1 n.1. The special findings do not mention the appellant's mistake of fact affirmative defense, so the appellant argues this court should accord his findings minimal deference. This issue, however, is mooted by our *de novo* review. As noted above, and in our decretal paragraph, we find the Government's evidence disproves the appellant's mistake of fact defense beyond a reasonable doubt.

[8] In pertinent part, the MCM defines the statutory rule of evidence as "The failure of an accused who is a maker . . . to pay the holder the amount due within 5 days after receiving either oral or written notice from the holder of the check . . . or from any other person having knowledge that such check . . . was returned unpaid because of insufficient funds, is prima facie evidence (a) that the accused had the intent to defraud . . . as alleged; and (b) that the accused knew at the time the accused made . . . the check . . .

which permits the court to infer the appellant's intent to defraud and her knowledge of insufficient funds due to her failure to pay the check holder within 5 days of receiving notice the checks were not paid on presentment. Specifically, the appellant asserts she was not provided required notice. We disagree. The evidence shows that the appellant received notice on 29 May 2014, when she was interviewed by law enforcement personnel.[9] Record at 216-18. We find no authority that renders law enforcement personnel ineligible as "any other person having knowledge" to notify an accused that their checks were "returned unpaid" for insufficient funds.[10] Thus, we find no error in the trial court's reliance on the inference.[11]

## Charge III – Article 134, UCMJ

The appellant argues the Government did not to prove beyond a reasonable doubt that her failure to maintain sufficient funds was dishonorable in the specifications under Charge III.[12] As discussed in our decretal paragraph, we dismiss Specifications 2, 3, and 4 of Charge III. But as the appellant's second assignment of error covers all the specifications under Charge III, we still address her claims regarding Specification 1.

---

that the accused did not have or would not have sufficient funds in, or credit with the bank . . . for the payment of such check . . . upon its presentment for payment." MCM, Part IV, ¶ 49c(17).

[9] During her 29 May 2014 interview by an Army criminal investigator, after being advised of her Article 31, UCMJ rights, the appellant acknowledged she did not verify her account balance status for all the checks she wrote on "Sunday, Monday, Tuesday, and Wednesday" [25-28 May 2014]. Prosecution Exhibit 30.

[10] MCM, Part IV, ¶ 49c(17).

[11] Although we found the inference unnecessary (due to the strength of the Government's case), the inference is nonetheless still available for our use in our factual sufficiency assessment. *See United States v. Smith*, 49 M.J. 279, 281-82 (C.A.A.F. 1998).

[12] The elements of dishonorably failing to maintain funds are: (1) That the accused made and uttered a certain check; (2) That the check was made and uttered for the purchase of a certain thing, in payment of a debt, or for a certain purpose; (3) That the accused subsequently failed to place or maintain sufficient funds in or credit with the drawee bank for payment of the check in full upon its presentment for payment; (4) That this failure was dishonorable; and (5) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces. MCM, Part IV, ¶ 68(b).

6

The appellant points to a variety of cases where military appellate courts held a failure to maintain sufficient funds was dishonorable when characterized by false representations, deceitful promises, absence of partial payments, ignoring past-due notices, and making payment with "bad" checks. Although the appellant acknowledges the dishonor element also can be proven by a gross indifference toward one's financial obligations, she argues that, here too, the Government failed to meet its burden. In particular, she cites *United States v. Hurko*, 36 M.J. 1176, 1178 (N.M.C.M.R. 1993), in which convictions for failure to maintain sufficient funds under Article 134, UCMJ, were, in part, set aside because, when this court found his reliance on his spouse to deposit funds into his account was "certainly careless and irresponsible," it was not dishonorable. The appellant argues her reliance on her husband's claim that he placed sufficient funds in her account was reasonable and therefore not dishonorable.

Beyond arguing her lack of knowledge of the insufficient funds and any fraudulent intent at the time she signed the checks, the appellant also argues that $200.00 was transferred into her checking account in May 2014; that several thousand dollars of debt, including all the checks written in October 2013, were ultimately paid via wage garnishment; and that she had no other means to pay the earlier debt.[13]

The Government, in addition to relying on evidence the appellant wrote the checks knowing the account had no funds and did so with the intent to defraud (*see* Charge II discussion above), also provided evidence that 89 deposited and re-deposited checks were returned for insufficient funds between 28 August 2013 and 10 July 2014; that in November 2013, the appellant stopped direct deposit of her pay and allowances into her NFCU account; and that other means existed to return items to AAFES notwithstanding her debarred status.

We believe the appellant's reliance on *Hurko* is misplaced. In *Hurko*, the court found the accused and his spouse had an agreement in which she would regularly place funds in his account during his 1989 deployment; that during the deployment their communication was limited to brief phone calls; that he did not receive any mail so was unaware of the contents of his bank statements; and that the total amount of checks written

---

[13] Although the appellant provided other evidence (e.g., her JBLM debarment, which hampered her ability to personally return some items), that evidence pertained only to the now-dismissed specifications under Charge III.

would have been covered had his spouse made deposits per their agreement. *Id.* at 1177. Thus, the court found Hurko's "honest reliance" on the anticipated deposits was not dishonorable. *Id.* at 1178. We distinguish the appellant's case from *Hurko* with little difficulty. The appellant and her spouse lived together during the period when all the checks were written; NFCU issued her regular written statements containing the bounced check fees; she terminated her direct deposit to NFCU; she admitted to investigators that her husband had made a prior false claim about placing funds in the account; she did not check the status of the account before writing the 2014 checks (which further degraded her means to pay the 2013 checks); and other than transferring $200.00 into the account in May 2014, all other funds remitted to NFCU occurred via involuntary garnishments. In order for the appellant to benefit from her claim of honest reliance, "the expectation of anticipated deposits must be believable [and] [w]hether the expectation is believable rests largely on how reasonable it is." *Id.*

We find the appellant's stated expectations, under the facts of her case, to be unreasonable. Accordingly, after weighing the evidence and making allowances for not having observed the witnesses, we are convinced of the appellant's guilt to Specification 1 of Charge III beyond a reasonable doubt. *Reed*, 54 M.J. at 41.

### Unreasonable Multiplication of Charges

Although the appellant argues, primarily relying on *United States v Quiroz*, 55 M.J. 334 (C.A.A.F. 2001), that Charge II and Charge III constitute an unreasonable multiplication of charges, we moot the issue with our holding below.

Specifically, though only raised as a postscript to the appellant's third assignment of error, we address her argument that Charge II and Charge III were charged in the alternative for contingencies of proof and therefore required the trial judge to either consolidate or dismiss the alternative specifications. *United States v. Elespuru*, 73 M.J. 326, 329 (C.A.A.F. 2014). Although not addressed in the Government's brief, the record is clear that the prosecution intentionally pled the offenses under Charge II and Charge III for contingencies of proof. Even though the Government's response to the trial motion for unreasonable multiplication discusses how the *actus reas* of the two charged offenses could occur over a protracted time period (implying two distinctly separate criminal acts), the trial counsel, nevertheless concludes if the

8

defense motion were granted, "it would take away from the [G]overnment's right to charge under alternate theories of criminality." Appellate Exhibit VII at 4. During oral argument on the motion, trial counsel repeatedly states the offenses were charged in the alternative, and went so far as to tell the judge, "[t]hey are two alternate theories of liability, and we'd agree with the court [on] . . . instructing [the members] . . . that they couldn't find guilt on -- of (sic) both 134 and 123a in both scenarios . . . ." Record at 42-43. The trial judge apparently agreed, deciding, due to the difficulty in determining whether the Article 134, UCMJ, offense was a lesser included offense of Article 123a, UCMJ, that "they may be charged in anticipation of varying contingencies of proof . . . because the finder of fact will be charge with an *either/or decision* on each specification." AE X at 5 (emphasis added).

In *Elespuru*, the court held even when the appellant waived his right to assert multiplicity on appeal, and even if the charges were merged for sentencing, that where it is clear the Government charged offenses in the alternative for exigencies of proof, the remaining offense should be dismissed. *Elespuru*, 73 M.J. at 329. Significantly, for our purposes here, the Court of Appeals for the Armed Forces dismissed the lesser offenses charged in the alternative *after* concluding the appellant was not prejudiced with regard to his sentence. *Id*. at 330. We are similarly bound. Accordingly, the findings of guilty to Specifications 2, 3, and 4 of Charge III are set aside and those specifications are dismissed.

Applying the analysis set forth in *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986) and *United States v. Moffeit*, 63 M.J. 40 (C.A.A.F. 2006), and after carefully considering the entire record and specifically noting the trial judge merged the relevant specifications of Charge II and Charge III for sentencing, we conclude that there has not been a dramatic change in the penalty landscape and are confident that the trial judge would have adjudged, and the CA would have approved, a sentence at least as severe as was awarded even absent the three specifications under Charge III. Art. 66(c), UCMJ; *United States v. Winckelmann*, 73 M.J. 11 (C.A.A.F. 2013); *Sales*, 22 M.J. at 308.

## Conclusion

The findings of guilty to Specifications 2, 3, and 4, of Charge III are set aside and those specifications are dismissed

9

with prejudice.  The remaining findings are affirmed.  The sentence as reassessed is affirmed.

For the Court

R.H. TROIDL
Clerk of Court